IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

THOMAS EUGENE CREECH,   )
   )   Case No. CV 99-0224-S-BLW
   Petitioner,   )
   )   **CAPITAL CASE**
v.   )
   )   **MEMORANDUM DECISION**
JOHN HARDISON, Warden,   )   **AND ORDER**
   )
   Respondent.   )
_____ )

The merits of the non-dismissed claims in the Second Amended Petition are currently before the Court in this capital habeas matter. After considering the parties' written and oral arguments, and the record herein, the Court shall deny relief.

## BACKGROUND

In 1981, Thomas Creech was serving two life terms in prison for murder. He had also been convicted of two murders in Oregon and California, and he had admitted to committing more than 24 others. (State's Lodging B-5, pp. 146-54.) Despite this lengthy and violent history, prison officials authorized Creech to be a janitor on the maximum security tier, which allowed him to be outside of his cell for several hours a day performing his duties. (State's Lodging B-5, pp. 191-92.)

**MEMORANDUM DECISION AND ORDER- 1**

David Dale Jensen, a 23-year-old first-timer at the state prison, was housed on the same tier as Creech.  A few years earlier, Jensen had shot himself in the head, which resulted in the removal of part of his brain and the insertion of a plastic plate in his head.  (State's Lodging B-5, p. 197.)  The injury impaired Jensen's speech, and his movement was limited on one side of his body.  (State's Lodging B-5, pp. 197-98.)  He was apparently considered to be a troublemaker by some of the inmates on the tier, and he had antagonized Creech by littering and arguing with him over television privileges.  (State's Lodging A-1, pp. 61-62.)

It is undisputed that on May 13, 1981, Creech killed Jensen by hitting him with a battery-filled sock and then stomping on his neck and head.  The precise circumstances of the murder have never been entirely clear, primarily because Creech has given different versions of the event over time, but the Idaho Supreme Court has found the following basic facts:

> [W]hile Jensen was out of his cell, Jensen approached Creech and swung a weapon at him which consisted of a sock containing batteries. Creech took the weapon away from Jensen, who returned to his cell but emerged with a toothbrush to which had been taped a razor blade. When the two men again met, Jensen made some movement toward Creech, who then struck Jensen between the eyes with the battery laden sock, knocking Jensen to the floor. The fight continued, according to Creech's version, with Jensen swinging the razor blade at Creech and Creech hitting Jensen with the battery filled sock.  The plate imbedded in Jensen's skull shattered, and blood from Jensen's skull was splashed on the floor and walls.  Finally, the sock broke and the batteries fell out, and by that time Jensen was helpless.  Creech then commenced kicking

**MEMORANDUM DECISION AND ORDER- 2**

Jensen about the throat and head.  Sometime later a guard noticed blood, and Jensen was taken to the hospital, where he died the same day.

*State v. Creech*, 670 P.2d 463, 465 (Idaho 1983).

Based on these events, on May 18, 1981, the State charged Creech with murder in the first degree.  (State's Lodging B-2, p. 3.)  The Ada County Public Defender's Office was appointed to represent him, and Rolf Kehne of that office was assigned to the case.  (State's Lodging B-2, p. 16.)

The parties made routine court appearances to discuss pretrial matters over the next three months.  (State's Lodging B-4, pp. 1-34.)  Then, on August 26, Creech wrote to the assigned trial judge, Robert G. Newhouse, indicating that he wished to change his plea to guilty.  (State's Lodging B-4, p. 35.)  Two days later, the judge caused Creech to be transported to his courtroom for a change of plea hearing.  (State's Lodging B-4, p. 35.)  It appears that Kehne was not notified of the hearing until a few minutes before it was set to begin, and he informed the court that Creech was refusing to take his legal advice.  (State's Lodging B-4, pp. 39-40.)  He also sought a continuance to confer with his client, but the court denied that request because Creech said that he wanted to proceed.  (State's Lodging B-4, pp. 41-42.)  Kehne's motion to withdraw as counsel was likewise denied.  (State's Lodging B-4, p. 42.)

The court then conducted a colloquy with Creech, informing him of the

**MEMORANDUM DECISION AND ORDER- 3**

rights that he was waiving and exploring whether any promises had been made to him.  (State's Lodging B-4, pp. 59-61.)  The prosecutor also questioned Creech, specifically asking him whether he intended to kill Jensen, to which he responded, "[w]hen I first had the fight with him, no.  But the second time, I did intend to kill him."  (State's Lodging B-4, p. 63.)  He admitted that he continued to kick Jensen in the throat and head after he was no longer a threat.  (*Id*.)  The court accepted the plea.  (State's Lodging B-4, pp. 64-65.)

After holding a separate aggravation and mitigation hearing, the district court sentenced Creech to death by written order ("1982 Findings"), but the Idaho Supreme Court remanded for sentencing in Creech's presence.  (State's Lodging B-3, pp. 8-10.)  On remand, the court re-read its original findings without hearing any new evidence, and the Idaho Supreme Court then affirmed the conviction and sentence.  *State v. Creech*, 670 P.2d 463 (Idaho 1983). Creech's later request to withdraw his guilty plea was unsuccessful, as was an appeal from that decision. *State v. Creech*, 710 P.2d 502 (Idaho 1985).

In 1986, Creech filed his first federal habeas petition in this Court.  (Case No. CV 86-1042-HLR.)  District Judge Harold L. Ryan set the case for an evidentiary hearing, but the hearing was not held due to counsel's dilatoriness, and Judge Ryan denied relief.  (Case No. CV 86-1042-HLR, Docket No. 32.)  On

**MEMORANDUM DECISION AND ORDER- 4**

appeal, the Ninth Circuit affirmed in part and reversed in part, concluding that three constitutional errors had occurred during the state court sentencing proceeding.  *Creech v. Arave*, 947 F.2d 873, 881-85 (9th Cir. 1991).  The United States Supreme Court granted review on a single issue and held that Idaho's "utter disregard" aggravating circumstance, as interpreted by the Idaho Supreme Court, adequately channeled a sentencer's discretion for purposes of the Eighth Amendment.  *Arave v. Creech*, 507 U.S. 463 (1993).  Because the Supreme Court did not review the Ninth Circuit's finding of other errors, the case was remanded to state court for a new sentencing hearing.  *Id*. at 478-79.

Rolf Kehne had since gone into private practice, but he continued to represent Creech, now with the assistance of his new law partner, John Adams. (State's Lodging H-36, pp. 1-13.)  Judge Newhouse was still the presiding judge.

At counsel's request, the sentencing hearing was continued several times before it commenced on March 13, 1995.  (State's Lodging H-36, p. 53.)  In the interim, Kehne filed a second Motion to Withdraw Guilty Plea, which the court denied after concluding that all issues regarding the validity of the guilty plea had already been resolved.  (State's Lodging H-37, pp. 111-12.)

The court took judicial notice of the entire record and received new evidence over the course of four days.  (State's Lodging H-36, pp. 53-427.)  In its written

**MEMORANDUM DECISION AND ORDER- 5**

findings ("1995 Findings"), the court found that the following statutory aggravating factors under Idaho Code § 19-2515 had been proven beyond a reasonable doubt: (1) Creech had previously been convicted of another murder ; (2) he committed the present murder with an utter disregard for human life; (3) he committed the murder, with the specific intent to kill, while he was already serving a sentence for murder; (4) he committed the murder, with the specific intent to kill, against a fellow prison inmate; and (5) he exhibited a propensity to commit murder that will probably constitute a continuing threat to society.  (State's Lodging H-35, pp. 267-68.)

The court also considered various mitigating circumstances, including that Creech was aging, had cooperated with law enforcement in the past, completed his GED, was creative, credited his wife for reduced disciplinary infractions, and might have a biological component making him predisposed to violence. (State's Lodging H-35, pp. 263-64.)  The court weighed all of the mitigating factors against each statutory aggravating factor individually and concluded that the accumulated weight did not outweigh each aggravator.  (State's Lodging H-35, p. 269.)  An Amended Judgment of Conviction imposing a death sentence was filed on May 1, 1995.  (State's Lodging H-35, pp. 318-19.)

Kehne filed an application for post-conviction relief on Creech's behalf

**MEMORANDUM DECISION AND ORDER- 6**

within 42 days of the entry of the Judgment and requested permission to withdraw. (State's Lodging I-38, p. 12.)  The court re-appointed the Ada County Public Defender in May1995.  (State's Lodging H-35, p. 332.)  An evidentiary hearing was scheduled, but the deputy public defender assigned to the case, August Cahill, requested, and was granted, a number of continuances so that he could fully prepare.  (State's Lodging I-39, pp. 1-53.)  Cahill amended the petition to include claims of ineffective assistance of trial counsel.  (State's Lodging I-38, p. 77.)

The evidentiary hearing was held in October 1996, over sixteen months after new counsel was appointed.  (State's Lodging I-39, p. 54.)  In a written decision, the district court denied all relief.  (State's Lodging I-38, p. 210.)  The Idaho Supreme Court affirmed the sentence and denial of post-conviction relief.  *State v. Creech*, 966 P.2d 1 (Idaho 1998).

In 1999, Creech initiated the current habeas proceeding, but the matter was stayed so that he could attempt to exhaust additional claims in a new state post-conviction proceeding.  In 2002, the Idaho Supreme Court dismissed the new action on procedural grounds.  *Creech v. State*, 51 P.3d 387 (Idaho 2002).  The federal case was also stayed while Creech pursued another application for post-conviction relief based upon *Ring v. Arizona*, 536 U.S. 584 (2002), which was dismissed by the Idaho Supreme Court.

**MEMORANDUM DECISION AND ORDER- 7**

Creech returned to federal court and filed a Second Amended Petition, raising forty-five claims.[1]  (Docket No. 131.)  The following claims have since been dismissed with prejudice:  4 (in part), 7, 8, 10 (in part), 11(in part), 13, 16, 17, 19, 22 (in part), 29-32, 35-45.  (Docket No. 173, pp. 33-34; Docket No. 181.)

The parties have filed briefs on the remaining claims, and they have presented oral argument to the Court.  The Court is now prepared to issue its final ruling.

## LEGAL FRAMEWORK FOR HABEAS REVIEW

The provisions of the Anti-terrorism and Effective Death Penalty Act (AEDPA) are applicable to this case.  (Docket No. 184.)  Under AEDPA, the Court cannot grant habeas relief on any federal claim that the state court adjudicated on the merits unless the adjudication of the claim:

1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

---

[1]  The docket contains two pleadings labeled as "Second Amended" petitions.  The first, filed on February 1, 2003, was withdrawn when the Court entered a stay based on *Ring*.  (Docket Nos. 102, 114.) The operative pleading is the Second Amended Petition filed on March 24, 2005.  (Docket No. 131.)

**MEMORANDUM DECISION AND ORDER- 8**

Section 2254(d)(1) has two clauses, each with independent meaning.  For a decision to be "contrary to" clearly established federal law, the petitioner must establish that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent."  *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

To satisfy the "unreasonable application" clause, the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case."  *Williams*, 529 U.S. at 413.  A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).  The state court need not cite or even be aware of the controlling United States Supreme Court decision to be entitled to AEDPA deference.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  Though the source of clearly established federal law must come from the holdings of the Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent.  *Duhaime v. Ducharme*, 200 F.3d 597,

**MEMORANDUM DECISION AND ORDER- 9**

600-01 (9th Cir. 1999).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the decision was based upon factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding."  *Id*.

Under all circumstances, state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## GUILT PHASE CLAIMS

Several of Creech's remaining claims attack the validity of his conviction for first degree murder.  Respondent argues that these claims must be dismissed because the claims either were or could have been raised in the 1986 habeas action. (Docket No. 262, p. 70.)  Creech has not responded to this argument, and the Court agrees with Respondent.

### Standard of Law

Under 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim that a habeas petitioner presents in a "second or successive habeas corpus application" that the he raised in a "prior application."  The court must also dismiss any new claim in a second or successive petition, unless the petitioner can show that the claim is based on a new rule of law that the Supreme Court has determined is

**MEMORANDUM DECISION AND ORDER- 10**

retroactive, or he can show that he could not have discovered the claim with due diligence *and* the facts underlying the new claim establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would now find him guilty.  28 U.S.C. § 2244(b)(2).  The district court has no jurisdiction to adjudicate second or successive petitions in any respect unless the petitioner has first received authorization to proceed from the appropriate court of appeals.  28 U.S.C. § 2244(b)(3).

The initial question, then, is whether a new habeas petition is a "second or successive" one.  That term is not defined in AEDPA, and it is clear that not all petitions that follow a previously dismissed one are subject to the provisions of § 2244(b).  *Hill v. Alaska*, 297 F.3d 895, 897 (9th Cir. 2002).  Rather, "second or successive" is a term of art that must be interpreted consistently with AEDPA's goals of comity, federalism, and finality, and against the backdrop of the pre-AEDPA doctrine of abuse of the writ.  *Panetti v. Quarterman*, 551 U.S. 930, 945-56 (2007).  Abuse of the writ principles prohibited the consideration of habeas claims that either were or could have been raised in a prior petition, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *McCleskey v. Zant*, 499 U.S. 467, 489 (1991).

The Ninth Circuit has determined that § 2244(b) must be applied claim-by-

**MEMORANDUM DECISION AND ORDER- 11**

claim to a new petition, because some claims may qualify as impermissibly successive while others may not. *See Allen v. Ornoski*, 435 F.3d 946, 951, 958 (9th Cir. 2006) (concluding that because the petitioner could have brought one of his two claims earlier, "it is a 'second or successive' habeas application").

<u>Discussion</u>

Creech had a full and fair opportunity to challenge his conviction in the first habeas corpus action, and he took advantage of that opportunity. In his 1986 Petition, Creech attacked the validity of his guilty plea on the grounds that he did not understand the elements of the charge, his mind was clouded by depression, medication, and threats to his family, and Kehne was constitutionally ineffective. (Case No. CV 86-1042-HLR, Docket No. 32, pp. 2-3.) Judge Ryan and the Ninth Circuit Court of Appeals rejected all claims challenging the conviction, with the Ninth Circuit finding that Kehne's "actions were reasonable under the circumstances" and that Creech had voluntarily and intelligently entered his guilty plea. *Creech v. Arave*, 947 F.2d 873, 877, 878-80 (9th Cir. 1991).

Therefore, all claims, old or new, that challenge the 1981 guilty plea and first-degree murder conviction are "second or successive" claims for purposes of AEDPA. Creech has not established that the Ninth Circuit has authorized him to proceed, and absent such authorization this Court lacks jurisdiction over these

**MEMORANDUM DECISION AND ORDER- 12**

claims.

Accordingly, the following claims will be dismissed without further comment: that part of Claim 4 alleging ineffective assistance of trial counsel before the 1995 resentencing proceeding (as alleged in ¶¶ 99(c), (d), (h), (I), (k)), Claim 9 (*Faretta* violation), the remaining portion of Claim 10 (deprivation of counsel at the guilty plea hearing), and the remaining portion of Claim 11 (conflict of interest because counsel was "a witness to the plea").

Creech may proceed with all properly exhausted claims of constitutional error that arise from the 1995 resentencing proceeding and judgment, because this is his first opportunity to litigate those issues in a federal habeas proceeding.[2]  *See*, *e.g.*, *Hill*, 297 F.3d at 897.

## PENALTY PHASE CLAIMS

### Denial of Right to Confrontation and a Reliable Sentencing Hearing (Claim 1)

Relying on *Crawford v. Washington*, 541 U.S. 36 (2004), and *Gardner v. Florida*, 430 U.S. 349 (1977), Creech contends that the sentencing court's consideration of hearsay information in the updated presentence investigation report ("PSI") violated his rights to confrontation and due process of law.  On

---

[2]  This includes Claim 12, in which Creech alleges a due process violation based on the "denial of his right to withdraw his plea prior to resentencing under the standards of a pre-sentence withdrawal." (Docket No. 133, p. 45.)  Though this is not a pure sentencing claim, it arose during the resentencing proceeding, and Creech could not have raised it in the 1986 habeas action.

**MEMORANDUM DECISION AND ORDER- 13**

appeal from the resentencing proceeding, the Idaho Supreme Court rejected the legal claim on *res judicata* grounds after finding that it had already been addressed in the first appeal.  *Creech*, 966 P.2d at 9-10.  Whether this Court's review is restricted by 28 U.S.C. § 2254(d) or is *de novo*, it concludes that Creech is not entitled to habeas relief.

In *Crawford* the United States Supreme Court held that testimonial hearsay is not admissible at a criminal trial unless the witness is unavailable and the defendant has had a prior opportunity for cross-examination.  541 U.S. at 59.  The Supreme Court has already held that *Crawford* is not retroactive to cases that were final when it was decided.  *Whorton v. Bockting*, 549 U.S. 406, 421 (2007).  Creech's case became final long before *Crawford* was issued, and the Supreme Court precedent in effect at the time of Creech's last sentencing hearing did not hold that a defendant had a right to confront all adverse witnesses at a capital sentencing hearing.  *Williams v. New York*, 337 U.S. 241 (1949).  The portion of this claim that relies on the Confrontation Clause, as interpreted by *Crawford*, is barred under the non-retroactivity principles of *Teague v. Lane*, 489 U.S. 288, 301 (1989).

Creech also relies on *Gardner v. Florida*, 430 U.S. 349 (1977).  In *Gardner*, the Supreme Court held that a defendant is denied due process of law when a death

**MEMORANDUM DECISION AND ORDER- 14**

sentence is based, at least in part, on information that the defendant had no opportunity to explain or deny.  *Id*. at 362.

In this case, the bulk of the information in the updated PSI was compiled and given to Creech before the original sentencing hearing in 1982, and to the extent that he contends that he did not have an opportunity to explain or deny that information in the 13 years before the resentencing hearing, his contention is not persuasive.  The new information, consisting primarily of Creech's prison disciplinary record since the early 1980s, was given to his counsel in the updated PSI five months before the resentencing hearing.  The State's witness who compiled the disciplinary records testified and was cross-examined at the resentencing hearing.  Therefore, Creech was also given a sufficient opportunity to meet and rebut all new information.

Creech counters that because the state district court denied his counsel's request for funds to locate the declarants of hearsay in the PSI, he was deprived of an opportunity to contest the reliability of that information.  (Docket No. 245, pp. 42-43.)  This argument disregards that counsel was aware of the majority of the material since 1981, had started preparing for the resentencing over a year before the hearing was held, and had the updated PSI in his possession for several months.  Moreover, counsel made his request for additional funds on the last day of the

**MEMORANDUM DECISION AND ORDER- 15**

resentencing hearing, and it was not supported with specificity.

For these reasons, Creech has not shown that he lacked a meaningful opportunity to explain or deny information upon which the state court relied in imposing a death sentence, and relief on Claim 1 shall be denied.

## Double Jeopardy (Claims 2 and 3)

In his second claim, Creech alleges that the sentencing court changed its view of the murder from one in which Jensen initially attacked and provoked Creech (1982 Findings) to a planned "execution" (1995 Findings). According to Creech, once the original finding in mitigation was made, the court was precluded by the Double Jeopardy Clause of the Fifth Amendment from changing that fact.

In rejecting this claim, the Idaho Supreme Court concluded that because "no reviewing court has ever held in this case that the State failed to prove its case that the death penalty was the appropriate punishment .... the Double Jeopardy Clause did not bar the trial court from resentencing Creech to death." *Creech*, 966 P.2d at 8. Creech has not demonstrated that this decision is contrary to or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

In *Bullington v. Missouri*, 451 U.S. 430, 439 (1981), the United States

**MEMORANDUM DECISION AND ORDER- 16**

Supreme Court held that the Double Jeopardy Clause attaches to capital sentencing hearings that "have the hallmarks of the trial on guilt or innocence."  When a defendant is "acquitted" of the death penalty after a sentencing trial, then, the prosecution is barred from seeking a death sentence at a retrial.  *Id*. at 445.  This holds true whether the factfinder is a jury or a judge.  *See Arizona v. Rumsey*, 467 U.S. 203, (1984) (a trial court's "judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty.")  But when no factfinder has determined that the prosecution failed to carry its burden to prove that the death penalty is an appropriate punishment, the defendant may again be subject to a death sentence.  *Poland v. Arizona*, 476 U.S. 147, 155-57 (1986).

The Idaho Supreme Court reasonably concluded that this issue was controlled by *Poland* rather than *Bullington* and *Rumsey*.  Creech has never been "acquitted" of the death penalty.  In 1982, in spite of its finding that Jensen provoked the attack, the sentencing court still found five statutory aggravating circumstances beyond a reasonable doubt, and, after weighing the mitigating circumstances against those aggravators, concluded that a death sentence was warranted.  When the Ninth Circuit ordered habeas relief, it made no finding that

**MEMORANDUM DECISION AND ORDER- 17**

the prosecution had failed to carry its burden of proof.  In other words, no factfinder or court has concluded at any time that Creech was legally entitled to a life sentence.

Nevertheless, Creech argues that the doctrine of collateral estoppel, also known as issue preclusion, prevented the state court from altering the previous finding.  The Court is not persuaded.

Issue preclusion is "a part of the Fifth Amendment's guarantee against double jeopardy." *Ashe v. Swenson*, 397 U.S. 436, 442 (1970).  In *Ashe*, the Supreme Court defined issue preclusion as "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443.  Later, the Court clarified that "issue preclusion is a plea available to prevailing parties. The doctrine bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding." *Bobby v. Bies*, 129 S.Ct. 2145, 2149 (2009).

*Bies* informs the result in the present case.  There, the defendant was sentenced to death, despite a mitigation finding that he was mildly mentally retarded.  129 S.Ct. at 2148-49.  After the Supreme Court determined that mentally retarded defendants are categorically exempt from execution, *see Atkins v. Virginia*, 536 U.S. 304 (2002), the state court ordered a re-examination of Bies'

**MEMORANDUM DECISION AND ORDER- 18**

mental state, but a federal court granted habeas relief, concluding that the Double

Jeopardy Clause precluded relitigation of the mental retardation issue. *Id*. at 2149.

On certiorari review, the Supreme Court reversed:

> The Ohio courts' recognition of Bies' mental state as a mitigating factor
> was hardly essential to the death sentence he received. On the contrary,
> the retardation evidence cut against the final judgment. Issue preclusion,
> in short, does not transform final judgment losers, in civil or criminal
> proceedings, into partially prevailing parties.
>
> ***
>
> Issue preclusion cannot transform Bies' loss at the sentencing phase into
> a partial victory.

129 S.Ct. at 2149, 2153.

Like the defendant in *Bies*, Creech was not a prevailing party in 1982

because he was sentenced to death, and the state court's finding that Jensen

provoked the fight "was hardly essential to the death sentence that [Creech]

received." *Id*.  As a result, the doctrine of issue preclusion did not prevent the

court from re-evaluating the facts at the 1995 resentencing hearing.

Moreover, Creech overstates the magnitude of the ostensible change in the

sentencing court's view of the facts; this was not a 180-degree change of course.  It

is true that the state court found that Creech was initially justified in responding to

Jensen's provocation, but it also found that whatever the initial motivation,

Creech's final assault was entirely out of proportion to the instigation and resulted

**MEMORANDUM DECISION AND ORDER- 19**

in an exceptionally brutal killing.  Creech overlooks that the court noted that "the victim, once the attack commenced, was under the complete domination and control of the defendant," and "[w]ith the victim's attack as an excuse, the defendant's murder then took on many of the aspect of an assassination.  These violent actions of the defendant went well beyond self-defense."  (State's Lodging B-2, p. 56.)  To the extent that the court may have changed its interpretation of the events by 1995, it was only as to the initial stages of the fight, rather than the manner in which Creech finished Jensen off after he had been rendered helpless.  Under either the 1982 or 1995 Findings, the court concluded that a death sentence was appropriate.

For similar reasons, Creech is not entitled to relief on Claim 3.  In this claim, he contends that because the sentencing court failed to note expressly in his 1982 Findings that Creech had the specific intent to kill Jensen as support for aggravating circumstances based on Idaho Code § 19-2515(f)(7) (1977) (certain first degree murders plus an intent to kill), it was precluded from making that finding in 1995.  But at no point did the court find that Creech *lacked* the intent to kill.  In fact, it wrote that "the murder, once commenced, appears to have been an intentional, rational act."  (State's Lodging B-2, p. 57.)  This interpretation was amply supported by the evidence, including Creech's own testimony at the change

**MEMORANDUM DECISION AND ORDER- 20**

of plea hearing:

Q. [Prosecutor]:  Mr. Creech, did you intend to kill Mr. Jensen.

\* \* \*

THE WITNESS:  When I first had the fight with him, no.  But the

second time, yes, I did intend to kill him.

Q.   [Prosecutor]:  That was later in the day?

A.  Yes.

Q.  Did you take action to kill him after he was no longer a threat to you?

A.  Yes, I did.

(State's Lodging B-4, p. 63.)

There having been no previous finding in Creech's favor on the intent issue,

the Double Jeopardy Clause did not prohibit the state court from finding a specific

intent to kill in 1995.  In addition, because the court indicated that "all the

mitigating factors combined do not outweigh each individual aggravating factor"

(State's Lodging H-35, p. 269), and because the other aggravators remain standing

as discussed later in this Memorandum Decision, any error would be harmless

beyond a reasonable doubt.  *See, e.g., Pizzuto v. Arave*, 280 F.3d 949, 970-71 (9th

Cir. 2002).

**MEMORANDUM DECISION AND ORDER- 21**

**Ineffective Assistance of Counsel at the Resentencing**

**(Claim 4, ¶¶ 100 (b)(d)(j)(o)(q))**

Creech contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel during the resentencing proceeding because his counsel failed to conduct a reasonable mitigation investigation, including an alleged failure to retain appropriate experts in a timely fashion. For the reasons that follow, this claim shall be denied.

<u>Mitigation at the 1982 and 1995 Sentencing Hearings</u>

Rolf Kehne represented Creech at the 1982 sentencing hearing and, with the assistance of his law partner, John Adams, again at the 1995 resentencing hearing.

At the 1982 hearing, Kehne offered the testimony of three witnesses in mitigation of punishment: Creech, a jailor, and a psychologist, Dr. John Stoner. (State's Lodging B-5, pp. 201-43.) Dr. Stoner testified that Creech had an antisocial personality, meaning that he tended to be impulsive, lacked empathy, and did not learn from punishment. (State's Lodging B-5, p. 210.) Dr. Stoner agreed that this type of disorder was a type of "learning deficit" that was probably developed in childhood. (State's Lodging B-5, p. 212.) Dr. Stoner also claimed that Creech suffered from a shizotypal personality, which is manifested in withdrawal, isolation, and occasionally bizarre thinking. (State's Lodging B-5, p.

**MEMORANDUM DECISION AND ORDER- 22**

213.)

At the 1995 resentencing hearing, Kehne presented new testimony from Creech's sister, Virginia Plageman.  She claimed that Creech was raised in a very poor family by a mother who was mentally unstable and a father who imposed strict and arbitrary discipline.  (State's Lodging H-36, pp. 147-52.)  She stated that, "in today's society, all of us children would have been verbally and physically abused," though she clarified that they had not been sexually abused.  (State's Lodging H-36, pp. 156-57.)  She also testified that Creech suffered a head injury from falling down the stairs when he was a boy.  (State's Lodging H-36, pp. 161-62.)  Plageman reported that three of her four brothers, including Creech, had been incarcerated as adults for committing murder or manslaughter.  (State's Lodging H-36, pp. 152-55.)  Both Plageman and her husband believed that Creech was a talented artist and poet, and she noted that Creech's relationship with his new wife had calmed him in recent years.  (State's Lodging H-36, pp. 174-75.)

Dr. Steven Brown, a psychologist, also testified in mitigation in 1995.  He had reviewed records, including previous mental health reports, interviewed Creech, and conducted a series of psychological tests.  Dr. Brown found that Creech had an antisocial personality and scored in the 96th percentile of the prison population for psychopathy, but it was his opinion that Creech probably had a

**MEMORANDUM DECISION AND ORDER- 23**

genetic or biological predisposition for violence.  (State's Lodging H-36, pp. 197, 200-01.)

In its 1995 Findings, the sentencing court considered the various mitigating circumstances that had been put forward, including that Creech might be aging out of his violent tendencies, had cooperated with law enforcement, completed his GED, was creative, credited his wife for reduced disciplinary infractions, and might have a biological component making him predisposed to violence. (State's Lodging H-35, pp. 263-64.)  The court weighed these mitigating circumstances against each of the five aggravating circumstances that it had found beyond a reasonable doubt, and concluded that they did not outweigh each aggravator such that the death penalty would be unjust.

### The Post-Conviction Proceeding

On May 17, 1995, Creech was appointed new counsel to represent him in the post-conviction matter.  (State's Lodging H-35, p. 332.)  The assigned deputy public defender, August Cahill, was granted continuances to prepare, and an evidentiary hearing was held on an Amended Petition, beginning on October 1, 1996.

Cahill called Rolf Kehne and John Adams to testify, and they offered wide-ranging testimony about their representation, with a emphasis on their preparation

**MEMORANDUM DECISION AND ORDER- 24**

for the resentencing.  They claimed that a defense attorney in a capital case has a
duty to conduct a thorough investigation into the defendant's background to
develop a full mitigation case, and that they had not completed that type of
investigation because of limited resources and time demands.  (State's Lodging I-
39, pp. 185-88, 200-05, 274-91.)  Cahill next elicited testimony from his
investigator and another attorney in the Public Defender's Office, and these
witnesses testified about the wide scope of a reasonable mitigation investigation,
such as the need to hire a mitigation specialist, interview family and friends of the
defendant, and retrieve school, medical, military, and prison records related to the
defendant.  (State's Lodging I-39, pp. 368-75, 435-39.)

Cahill also presented the testimony of Creech's ex-wife, Emma Asbrock,
and his daughter with Asbrock, Shelly Creech.  Asbrock claimed that Creech and
others had told her that Creech's aunt and uncle had sexually abused him.  (State's
Lodging I-39, pp. 57-59.)  Shelly Creech testified that her father "had been abused
as a child."  (State's Lodging I-39, p. 88.)  Both Asbrock and Shelly Creech
admitted to having serious mental health issues; Asbrock suffered from post-
traumatic stress disorder, and Shelly Creech had been diagnosed with
schizophrenia and major depression.  (State's Lodging I-39, pp. 75, 82.)

After depleting his list of witnesses, Cahill requested a delay in the hearing

**MEMORANDUM DECISION AND ORDER- 25**

for "approximately 30 to 90 days."  (State's Lodging I-39, p. 458.)  In support, he

explained:

> [I]t's been patently clear from these proceedings this last week, matters
> have come to my attention concerning the existence of possible
> mitigation evidence, and support both of my claim of ineffective
> assistance and the post-conviction petition in its various forms.
>
> ***
>
> That was part of the reason why I had [the investigator] talk about the
> other matters.  I think it's fairly obvious from his testimony that we have
> not been able to do the very things that we would hope — that we
> complained that Mr. Kehne didn't do because of time considerations.

(State's Lodging I-39, p. 459.)

Judge Newhouse denied the request.  On December 12, 1996, he issued his

written decision denying all post-conviction relief, concluding, in relevant part,

that counsel had not been ineffective during the resentencing proceeding:

> Accepting for purposes of this decision the testimony elicited at the post
> conviction relief hearing as to what evidence Kehne could have or
> should have secured to give as many mitigating factors as possible, this
> court's firm belief is that the outcome of the sentencing would not have
> changed.  This court's interest was (1) whether Creech had killed Jensen;
> (2) was Creech predisposed to take a human life and (3) was he
> incapable of comprehending the outcome of his actions.  The childhood
> history of Creech was incidental to this court; the possibility of a
> biological predisposition was listed as a mitigating factor by this court;
> and the suggestion that the victim was a punk was also listed.  However,
> when it is all said and done this court determined that Thomas Eugene
> Creech was an adult male of at least normal intelligence who was able
> to comprehend the results of his actions and did with specific intent kill
> another inmate while imprisoned as a result of an earlier conviction.  The

**MEMORANDUM DECISION AND ORDER- 26**

second prong of the ineffective assistance test has not been met.

(State's Lodging I-38, pp. 209-10.)

The Idaho Supreme Court's Decision

On appeal, the Idaho Supreme Court affirmed.  *State v. Creech*, 966 P.2d 1, 23 (1998).  After summarizing the evidence that Kehne and Adams had offered at the resentencing hearing, and noting the abundant material contained in the PSI, the Idaho Supreme Court wrote, "Creech has not identified what other information should have been included. "  *Id*. at 18.  The court concluded that Creech had shown "no objective information" or "obvious omissions in the records and transcripts in this case which would support a finding that Creech's counsels' performance was deficient in investigating Creech's personal history."  *Id*.  The court also noted, with approval, the district court's finding that additional mitigating evidence would not have changed the outcome.  *Id*.  Finally, pointing to on a similar lack of an evidentiary showing, the state court also rejected Creech's claim that his counsel were ineffective in handling mental health issues.  *Id*. at 19.

Clearly Established Federal Law

The Sixth Amendment right to the effective assistance of counsel applies to the penalty phase of a capital trial.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prove a violation of the Sixth Amendment, the petitioner must show

**MEMORANDUM DECISION AND ORDER- 27**

that (1) his counsel's performance was unreasonably deficient and (2) the defense was prejudiced as a result.  *Id.* at 687.

The standard for attorney performance in a criminal case is that of reasonably effective assistance, measured under prevailing professional norms. *Strickland*, 668 U.S. at 687-88.  In assessing whether the representation fell below an objective standard of reasonableness, counsel's conduct must be viewed under the facts that existed at the time that the challenged act or omission occurred, rather than through the benefit of hindsight.  *Id*. at 689.  The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id*.  To prove actual prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id*. at 694.

Under AEDPA, a state court has significant leeway to apply rules of general applicability, such as the rule for ineffective assistance of counsel, to the different fact patterns that come before it.  *See*, *e.g.*, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

## Discussion

Creech is unable to establish that the Idaho Supreme Court's decision is

**MEMORANDUM DECISION AND ORDER- 28**

contrary to or involved an unreasonable application of *Strickland*, or that it is based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

In *Strickland*, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 668 U.S. at 677.  That is the case here.

Creech's counsel spent a considerable amount of time and effort at the state court post-conviction evidentiary hearing developing evidence about the theoretical scope of a reasonably competent defense attorney's mitigation investigation in a capital case.  He spent less time developing the specific facts of Kehne and Adam's investigation, and, with the exception of testimony from Emma Asbrock and Shelly Creech, he offered almost no evidence that Kehne and Adams failed to uncover.  The record before the state court was heavy on the performance aspect of *Strickland* and light on prejudice.

The evidence that was intended to show prejudice, testimony from Asbrock and Shelly Creech, was especially thin.  Asbrock admitted that her belief that Creech had been sexually abused was based on what he and others had told her some 25 to 30 years earlier.  Both Asbrock and Shelly obviously suffered from

**MEMORANDUM DECISION AND ORDER- 29**

serious mental health problems, and the State presented evidence that Asbrock had a nervous breakdown upon her arrival at the Boise airport before testifying at the hearing.  The credibility of these witnesses was extremely suspect.

Additionally, as the state district court acknowledged, Kehne and Adams faced the daunting task cobbling together a plausible case for a life sentence in the face of overwhelmingly strong aggravating circumstances.  Creech stood before the state court a confessed multiple murderer who had committed the present crime—the bludgeoning death of a partially disabled man—while incarcerated for murder.  The state court found that five statutory aggravating circumstances had been proven beyond a reasonable doubt.  The court was well aware of Creech's psychological make-up from numerous mental health reports, and it knew that Creech had been raised in a poor and abusive family and might have some biological component driving his violent tendencies.  The court also considered his talent as an artist and musician, and his devotion to his wife.  None of these facts had much force when weighed against each aggravating circumstance.  Adding into the mix the vague hearsay evidence about childhood sexual abuse from dubious sources, or even more reliable mitigating evidence, would not have created a reasonable probability of a different outcome.  The Idaho Supreme Court's adjudication of this claim on the record before it cannot be said to be objectively

**MEMORANDUM DECISION AND ORDER- 30**

unreasonable.

At oral argument before this Court, Creech's habeas counsel suggested that state district court misunderstood the broad scope of mitigating evidence, implying that the state court took a close-minded approach to the ineffective assistance claim.  Habeas counsel pointed to the court's written decision in which it noted the three areas about which it was particularly concerned about: (1) whether Creech killed Jensen; (2) whether he was predisposed to killing; and (3) whether he was capable of understanding the consequences of his actions.  (State's Lodging I-38, pp. 209-10.)  Counsel suggests that this constituted an unreasonable application of Supreme Court case law defining relevant mitigating evidence.

The Court does not share counsel's view of the record.  At the 1995 resentencing, the state district court expressly considered the various mitigating circumstances that Kehne and Adams had put forward on Creech's behalf.  And, after the post conviction hearing, it "accept[ed] for purposes of this decision the testimony elicited at the post conviction relief hearing as to what evidence Kehne could have or should have secured to give as many mitigating factors as possible." (State's Lodging I-39, p. 209.)  The more persuasive interpretation of the post-conviction decision is that the judge simply did not believe that additional mitigating evidence would have carried much weight.  While it is true that a

**MEMORANDUM DECISION AND ORDER- 31**

defendant facing a potential death sentence cannot be precluded from offering evidence to the factfinder that has any tendency to call for a sentence less than death, *see, e.g., Lockett v. Ohio*, 438 U.S. 586, 604 (1978), the factfinder may assign whatever weight that it deems appropriate to such evidence.  Moreover, it is the Idaho Supreme Court's decision that is reviewed under § 2254(d), not the state district court's decision, and the Idaho Supreme Court gave no indication that it failed to understand the sweep of mitigation in a capital case.

Creech also attempts to bolster his claim here with evidence that was not before the state courts, alleging that a neurological examination conducted in 2005 has revealed that he has "bilateral brain damage that affected [his] insight, judgment and capacity to exercise social inhibitions."  (Docket No. 245, p. 25.)

The Court previously denied Creech's Motion for an Evidentiary Hearing on this claim after concluding that he had a full and fair opportunity to develop evidence in the state post-conviction matter.  (Docket No. 229, p. 13.)  The Court further concluded that, "to the extent that *additional* facts were not offered to the state court at the appropriate time, the failure to do so is attributable to him."  (Docket No. 229, p. 13.) (Emphasis in original.)  The Court reaffirms that decision.

This case was far from a blank slate when post-conviction counsel was assigned in May of 1995; it had already worked its way through the state and

**MEMORANDUM DECISION AND ORDER- 32**

federal courts for fifteen years, and an extensive documentary record had been developed.  Despite this, counsel waited until sixteen months after his appointment, and after the evidentiary hearing was well underway, to seek a continuance for "approximately 30 to 90 days" so that he could complete his investigation.  He candidly admitted that "we have not been able to do the very things that we would hope — that we complained that Mr. Kehne didn't do because of time considerations."  (State's Lodging I-39, p. 459.)

When a habeas petitioner has failed to develop the factual basis for a claim in state court, the federal court "shall not hold an evidentiary hearing on the claim" unless the petitioner can meet one of two narrow statutory exceptions.  28 U.S.C. § 2254(e)(2).  This restriction only applies, however, if the petitioner lacked diligence in state court, and diligence under these circumstances means that the petitioner and his counsel made "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims."  *Williams v. Taylor*, 529 U.S. 420, 435-37 (2000).

Here, post-conviction counsel did not offer any reason for his delay other than referring obliquely to "time considerations." Although he listed a few areas that he wanted to explore in greater depth, such as Jensen's prison record, and claims of sexual abuse and mental illness within the Creech family, he provided no

firm reason to believe that more favorable evidence would actually be unearthed. Based on his unexplained delay and his weak showing of what he expected to find, counsel did not exercise diligence in gathering all of the facts, and Judge Newhouse's denial of the continuance was reasonable.  Counsel's lack of diligence is attributable to Creech.  *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (lack of diligence may be by the "prisoner or the prisoner's counsel").  Creech does not argue that either exception in 28 U.S.C. § 2254(e)(2) is applicable, and the Court concludes that they are not.

In any event, the Court has reviewed the current offer of proof and finds nothing contained therein tending to show that habeas relief would be warranted if the Court expanded the record or held an evidentiary hearing.  Much of this information was already before the state courts, albeit in a less specific way, including evidence that Creech grew up in an abusive and dysfunctional household, that his mother and probably other relatives suffered from mental illness, that he injured his head in a childhood fall, and that he had cognitive, coping, and learning deficits.  (Docket No. 245-2.)

The new evidence consists primarily of a neurological examination, which counsel alleges shows "bilateral brain damage with the right side more damaged than the left," but the state courts already assumed the truth of Dr. Brown's

**MEMORANDUM DECISION AND ORDER- 34**

testimony in 1995 that there could be a biological aspect to Creech's violent behavior, and that fact was not significant to the outcome.  (Docket No. 245-2, ¶ 1.)  A neurologist's opinion that Creech has brain damage may be more specific than Dr. Brown's testimony, but it would have provided only a modest counterweight to the heavy aggravating factors, which included Creech's extensive criminal history showing a predisposition to commit murder, and his decision to kill a weaker prison inmate over a petty dispute in an especially brutal manner.

The offer of proof is similar to mitigation evidence that the Ninth Circuit found did not find to be persuasive on a claim of ineffective assistance of counsel in *Bible v. Ryan*, 571 F.3d 860 (2009).  There, the defendant kidnapped, sexually assaulted, and murdered a nine-year-old child, and he had previously been convicted of sexual assault and kidnapping.  *Id*. at 867.  Given the aggravated nature of the offense and the robust mitigation case that had previously been developed, the Ninth Circuit held that counsel's failure to present speculative evidence that certain factors in the defendant's background may have contributed to a possible brain dysfunction was not prejudicial.  *Id*. at 872.  In this case, the circumstances of the present offense and Creech's criminal history were arguably more aggravated than those in *Bible*, and his current proffer is similarly speculative.

**MEMORANDUM DECISION AND ORDER- 35**

Based on the foregoing, the remaining portion of Claim 4 shall be denied.

## Consideration of Prior Proceedings (Claim 5)

In his next claim, Creech alleges that the state district court's decision to take judicial notice of the entire record, including the hearsay in the PSI, deprived him of his constitutional rights to confrontation and to a reliable capital sentencing hearing.  Creech has not explained how this claim differs in a material way from Claim 1.  The Court incorporates that analysis and denies relief for the same reasons.

## Consideration of Vacated Death Sentences (Claim 6)

Creech contends that the state district court's reliance on the fact that he had previously been sentenced to death in another case and in the present case deprived him of his rights under the Eighth and Fourteenth Amendments because those sentences had been vacated as unconstitutional.

In its 1995 Findings, the state court did not rely on the 1982 death sentence beyond noting it by way of introduction.  (State's Lodging H-35, p. 202.)  This Court also construes the state court's listing of the vacated death sentence in the *previous* case, as a non-statutory aggravator, as primarily an accurate reflection of historical fact.  The court wrote, "[t]he defendant has previously been sentenced to death by a district court of the State of Idaho.  Such death sentence was reversed by

**MEMORANDUM DECISION AND ORDER- 36**

the Idaho Supreme Court after finding the earlier death penalty statute unconstitutional."  (State's Lodging H-35, p. 266.)  The state court's recitation of this fact did not have a material impact on the outcome.

Also, because the United States Supreme Court has never held that a factfinder in a capital case cannot add a vacated death sentence into the sentencing calculus for whatever probative value it may have, Creech is unable to show that the Idaho Supreme Court's implicit rejection of this claim on automatic review under Idaho Code § 19-2827 is contrary to or objectively unreasonable application of clearly established federal law.[3]  *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

Finally, any error would be harmless.  The compelling aggravating fact was that Creech had committed other *murders*, regardless of the sentences he had received.  But even if this particular non-statutory aggravating factor, one among many, were tainted in some respect, the other statutory aggravating factors stand undisturbed and support the death sentence.  *Pizzuto v. Arave*, 280 F.3d 949, 970-71 (9th Cir. 2002).

## Motion to Withdraw Guilty Plea (Claim 12)

---

[3]  This Court previously determined that the claim has been exhausted under the principles in *Beam v. Paskett*, 3 F.3d 1301, 1306-07 (9th Cir.1993) (holding that the Idaho Supreme Court expressly or implicitly reviews all claims within the scope of Idaho Code § 19-2826).  Therefore, because the Idaho Supreme Court has rejected the claim on the merits, it is entitled to AEDPA deference, and Creech must show that its decision is objectively unreasonable.

Under Idaho law, a guilty plea may be set aside before sentencing when there is a "just reason" for doing so.  *State v. Ballard*, 761 P.2d 1151, 1154 (Idaho 1988).  After sentencing, a guilty plea may be set aside only if the defendant can show manifest injustice.  *Id*.  Creech contends that he was deprived of due process of law when the state courts refused to review his second motion to withdraw his guilty plea, filed before the 1995 resentencing hearing, under the more lenient "just reason" standard.

Creech is essentially arguing that the state courts misapplied state legal standards.  Federal habeas corpus relief is "unavailable for alleged errors in the interpretation or application of state law." *Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir.1994) (citation and quotation marks omitted); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  This Court cannot second guess the state court's interpretation of Idaho law unless "it appears that its interpretation is an obvious subterfuge to evade consideration of a federal issue." *Peltier*, 15 F.3d at 862 (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  The Court finds no subterfuge here.

Deference to the state court is particularly appropriate in this case given its unique procedural history.  Creech was permitted to litigate a motion to withdraw

**MEMORANDUM DECISION AND ORDER- 38**

his guilty plea in state court before the 1986 habeas corpus action resulted in the setting aside of his death sentence, and his claims of an involuntary plea were fully aired in that proceeding.  When he returned for resentencing, then, he did not stand in the same posture as a defendant who has filed a first motion to withdraw a guilty plea before an initial sentencing hearing, and the state court had considerable leeway in discerning the appropriate state law standard to apply on these facts.

To the extent that a cognizable federal claim exists, Creech has not shown that the Idaho Supreme Court's decision is contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

## Evidence Supporting the "Utter Disregard" Aggravating Factor (Claim 14)

Creech next claims that the evidence was insufficient to support the state district court's finding that Creech exhibited an "utter disregard to the value of human life."  Idaho Code § 19-2515(g)(6).

When a petitioner alleges that an aggravating factor is unsupported by the evidence, a reviewing court must decide whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the aggravating factor beyond a reasonable doubt."  *Lewis v. Jeffers*, 497 U.S. 764, 781 (1990) (emphasis in original).

**MEMORANDUM DECISION AND ORDER- 39**

The Idaho Supreme Court has determined that the "utter disregard" aggravator is meant "to be reflective of acts or circumstances surrounding the crime which exhibit the highest, utmost callous disregard for human life, i.e., the cold-blooded, pitiless slayer." *State v. Osborn*, 631 P.2d 187, 201 (Idaho 1981). The United States Supreme Court has already upheld this limiting construction against a vagueness challenge in this case. *Creech*, 507 U.S. at 471. The Supreme Court noted that a "cold blooded, pitiless slayer" is one who kills without feeling or sympathy and that a sentencer can find this fact objectively based upon the defendant's "attitude toward his conduct and his victim." *Id*. at 472-73.

Ample evidence supported a finding that Creech was a cold-blooded, pitiless slayer. Regardless of the precise circumstances surrounding the initial interaction between Creech and Jensen, Creech's own statements proved that he continued to beat Jensen mercilessly after he was no longer a threat. Other evidence also showed that Creech took breaks between beatings and turned up the volume on a radio, showing cool reflection and deliberation. These are the actions of a person who kills in a cold-blooded manner without sympathy. Creech has not established that the Idaho Supreme Court's adjudication of this claim is contrary to or an objectively unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented.

**MEMORANDUM DECISION AND ORDER- 40**

## Failure to Apply the Correct Weighing Process (Claim 15)

Creech alleges that the state district court failed to weigh all mitigating factors against each statutory aggravating factor, as required by *State v. Charboneau*, 774 P.2d 299 (1989).  This allegation is factually and legally incorrect.[4]

In *Charboneau*, the Idaho Supreme Court construed Idaho Code § 19-2515(c) as requiring district courts to weigh all mitigating evidence collectively against each aggravating circumstance found to exist individually.  *Id.* at 323. Here, in its written findings, the state court expressly noted that "[t]his court has weighed all the mitigating factors in relation to each aggravating factor as required by the Idaho Supreme Court decision in *St. v. Charboneau*, and finds that all the mitigating factors combined do not outweigh each individual aggravating factor." (State's Lodging H-35, p. 269.)  Nothing more specific than that was required by state law.  Creech's argument that the court should have used the words "every"  or "any" in addition to "each" is a non-persuasive exercise in semantics.

Creech also contends that the two aggravators resting upon a finding of first degree murder plus the specific intent to kill were "not statutory aggravators under the 1995 death penalty statute effective at the time of appellate review." (Docket

---

[4] The portion of this claim alleging that the Idaho Supreme Court erred has been dismissed as procedurally defaulted.  (Docket No. 173, p. 34.)

No. 131, p. 50.)  These aggravators were valid at the time that Creech committed the murder and again when he was resentenced in early 1995, and he offers no authority showing that a valid statutory aggravators that are amended after sentencing but before appeal call into question a death sentence.  As such, he cannot show that he is entitled to relief under § 2254(d).  In addition, because the three other aggravators stand, and because the state district court weighed each aggravator individually, any error would be harmless beyond a reasonable doubt. *Pizzuto v. Arave*, 280 F.3d 949, 970-71 (9th Cir. 2001); *Hoffman v. Arave*, 236 F.3d 523, 541-42 (9th Cir. 2001).

Creech's argument that the state court cannot consider non-statutory aggravating factors is likewise without merit.  So long as the sentencer's discretion is sufficiently guided to comply with the Eighth Amendment's narrowing requirement, "nothing in the Constitution limits the consideration of non-statutory aggravating factors."  *Babbitt v. Calderon*, 151 F.3d 1170, 1178 (9th Cir. 1998) (citing *Barclay v. Florida*, 463 U.S. 939, 956 (1983).

## Ex Post Facto Application of Amended Statute (Claim 18)

Creech contends that the application of amendments to Idaho's death penalty statutory framework to the facts of his case violated the prohibition on ex post facto laws in Article I, Sec. 9 of the Constitution.  From his Brief on the Merits, it

MEMORANDUM DECISION AND ORDER- 42

appears that this claim stems only from the Idaho Supreme Court's alleged failure to apply proportionality review on appeal and, apparently, its failure to address the continuing validity of the two "definition of murder" aggravators after a statutory change.  (Docket No. 245, pp. 69-75.)

This Court previously determined that Claim 18 is procedurally defaulted to the extent that it raises error that occurred on state appellate review, because the doctrine of implicit exhaustion from *Beam* does not encompass claims of error on appellate review.  (Docket No. 173, p. 12.)  As a result, the claim shall be dismissed.

### Unconstitutional Shifting of the Burden of Proof (Claim 20)

The Court is unable to find any discussion of Claim 20 in Creech's Brief on the Merits.  Therefore, the Court deems it to have been waived.

The claim also fails on its merits.  The United States Supreme Court has recently reiterated that the development and refinement of the procedures for the weighing of mitigating and aggravating circumstances will be left largely to the states, as long as the prosecution is required to prove the existence of the aggravating factors beyond a reasonable doubt.  *Kansas v. Marsh*, 548 U.S. 163, 171 (2006).  Because the Idaho Code § 19-2515 requires aggravating circumstances to be proven beyond a reasonable doubt, and does not limit the

defendant from offering mitigating evidence, there is no unconstitutional shifting of the burden to the defendant.

## Mandatory Imposition of the Death Penalty (Claim 21)

Creech asserts that Idaho Code § 19-2515 results in a mandatory death sentence, in violation of *Woodson v. North Carolina*, 428 U.S. 280 (1976).  This claim is also without merit.

While it is true that an individualized determination in capital sentencing is constitutionally required, the Supreme Court has held "[t]he requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence."  *Blystone v. Pennsylvania*, 494 U.S. 299, 307 (1990); *see also Boyde v. California*, 494 U.S. 370, 374-77 (1990) (rejecting challenge to death penalty statute providing that "[i]f you conclude that the aggravating circumstances outweigh the mitigating circumstances, you shall impose a sentence of death").  In *Marsh*, the Supreme Court wrote that if "the sentencer is not precluded from considering relevant mitigating evidence, a capital sentencing statute cannot be said to impermissibly, much less automatically, impose death."  548 U.S. 163, 171 (2006) (citation omitted)

Idaho Code § 19-2515 allows for the consideration of all mitigating circumstances, and it does not impose a mandatory death sentence.

**MEMORANDUM DECISION AND ORDER- 44**

### Financial Allocation of  Idaho Counties (Claim 22)

For his next claim, Creech raises an equal protection and due process claim based on his contention that the different levels of funding for capital prosecutions in Idaho's large and small counties results in arbitrary enforcement of the death penalty.

Creech offered only anecdotal evidence in state court about county financing, mostly in the form of opinions from criminal defense attorneys.  (State's Lodging I-38, p. 209.)  He provided no hard empirical data showing a discrepancy among similarly situated, potential capital defendants.   Lacking such evidence, he did not carry his burden to establish a predicate that a meaningful difference existed.

Furthermore, while an Idaho prosecutor has the discretion to decide whether to bring capital charges—a decision that may be based in part on funding—the sentencer's discretion whether to impose a death sentence is adequately narrowed by the requirement that the sentencer find aggravating circumstances beyond a reasonable doubt and weigh those circumstances against the mitigating evidence that has been offered.  *Cf. Gregg v. Georgia*, 428 U.S. 153, 199 (1976) (holding that a death penalty scheme is constitutional when the sentencer's discretion is guided and narrowed by objective standards).  This minimizes the risk of arbitrary

enforcement of the death penalty.

For these reasons, Creech has not shown that he is entitled to relief under § 2254(d).

## Alternatives to the Death Penalty (Claim 23)

In Claim 23, Creech asserts that the state district court failed to consider non-capital sentencing alternatives before imposing a death sentence.  Creech has not cited clearly established federal law or authority that a state sentencing body must consider such alternatives, and this appears to be solely a question of state law that is not reviewable in a federal habeas proceeding.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Recasting an error of state law as a denial of federal due process is insufficient.

At any rate, though the state district court did not expressly indicate that it had considered sentencing alternatives short of death, it implicitly did so.  The court found that "Tom Creech cannot be rehabilitated," "anything less than total isolation would give rise to a substantial chance of the defendant killing again," and "[t]he protection of society demands that Thomas Eugene Creech receive the Death Penalty."  (State's Lodging H-35, pp. 267-69.)  This language shows that the state court did not believe that a life sentence, or anything short of that, would be an appropriate disposition of the case.

**MEMORANDUM DECISION AND ORDER- 46**

**Consideration of Mitigating Circumstances as Aggravating (Claim 24)**

Creech next raises an Eighth Amendment violation based on the state district court's alleged failure to consider relevant mitigating evidence.  He argues that the state court failed to consider evidence that he was aging out of his violent tendencies and that he had adjusted well to confinement in prison.  (Docket No. 245, p. 48.)

Creech is correct that he had a constitutional right to have the sentencer consider all relevant evidence that may call for a sentence less than death.  *Eddings v. Oklahoma*, 455 U.S. 104, 114-115 (1982).  But the record indicates the sentencing court did consider his mitigating evidence, including that he reached an age that tended to be less violent and that his disciplinary infractions had decreased in recent years.  (State's Lodging H-35, pp. 263-64.)  Creech's real complaint might be that the sentencer did not afford his evidence as much weight as he would have liked, but the Constitution does not demand that the factfinder place any particular weight on the evidence that has been presented.  *See, e.g., Eddings*, 455 U.S. at 114-115.

**Vagueness of the Propensity to Commit Murder Aggravator (Claim 25)**

Creech alleges that the "propensity to commit murder" aggravating circumstance is unconstitutionally vague under the Eighth and Fourteenth

Amendment.

To minimize the risk of wholly arbitrary and capricious infliction of a death sentence, states seeking to impose the death penalty must sufficiently narrow the sentencer's discretion. *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 189, 206-207 (1976). A state's death penalty "system could have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing . . . could occur." *Id.* at 195 n.46. Claims of vagueness directed at aggravating circumstances defined in capital punishment statutes assert that the challenged provision fails adequately to inform sentencers of what they must find to impose the death penalty. *Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988).

In 1983, the Idaho Supreme Court held in Creech's own case that the propensity to commit murder circumstance applies to "a willing predisposed killer, a killer who tends toward destroying the life of another with less than the normal amount of provocation. We would hold that propensity assumes a proclivity, susceptibility, and even an affinity toward committing the act of murder." *State v. Creech*, 670 P.2d 463, 471-72 (Idaho 1983). This definition is sufficiently narrow to channel the sentencer's discretion to focus on the future dangerousness of the offender based on objective facts, as this Court has previously ruled. *Beam v.*

**MEMORANDUM DECISION AND ORDER- 48**

*Paskett*, 744 F.Supp. 958, 964 (D. Idaho 1990) overruled on other grounds at 3

F.3d 1301 (9th Cir. 1993); *see also State v. Sivak*, 2008 WL 782877 at *25-26 (D.

Idaho 2008).

The state court resentenced Creech in 1995, long after the Idaho Supreme

Court narrowed the aggravator to a "willing, predisposed killer," and where the

sentencer is a judge rather than a jury, the federal court must presume that the

judge knew and applied any existing narrowing construction. *Arave v. Creech*, 507

U.S. 463, 471 (1993).

Creech cannot show that the Idaho Supreme Court's implicit conclusion, on

*Beam* review, that the aggravator withstands vagueness scrutiny is contrary to or

involved an unreasonable application of clearly established federal law, or was

based on an unreasonable determination of the facts in light of the evidence

presented.

### Sufficiency of the Evidence to Support the Propensity Aggravator (Claim 26)

Creech has not argued this claim in his Brief on the Merits, and the Court

assumes that he has abandoned it.  Regardless, sufficient evidence of his multiple

prior homicides existed – from his own statements, Sheriff Eldon Palmer's

testimony, and judicial records – to support a finding, beyond a reasonable doubt,

that Creech, "by prior conduct or conduct in the commission of the murder at hand,

MEMORANDUM DECISION AND ORDER- 49

has exhibited a propensity to commit murder which will probably constitute a continuing threat to society."  Idaho Code § 19-2515(g)(8).

### Fair and Impartial Judge (Claim 27)

In Claim 27, Creech claims that the state district court judge, Judge Newhouse, was biased against him because he expressed his predisposition to impose the death penalty.  To piece together his claim, he relies largely on a few written and oral statements that the judge made at points in a voluminous state court record.

For instance, in denying a motion for new trial, the judge wrote, in part, "Thomas Eugene Creech's plea and my sentence will stand!" and "[a] sentence of death is a tragic and extraordinary remedy, but when legally and properly imposed, execution must follow, or surely we are not a nation governed by law."  (State's Lodging F-24, p. 31.)  In denying post-conviction relief, the judge wrote that "this court's firm belief is that the outcome of the sentencing would not have been changed" regardless whether trial counsel had unearthed additional mitigating evidence.  (State's Lodging I-38, p. 209.)  At oral argument, Creech's habeas counsel argued that, as further evidence of bias, the state court judge employed a truncated view of mitigating evidence in the post-conviction matter and disallowed inquiry into certain areas of mitigation on hearsay grounds.

**MEMORANDUM DECISION AND ORDER- 50**

Whether viewed through the deferential lens of § 2254(d), or under *de novo* review, Creech is not entitled to habeas relief.

A fair proceeding in front of an impartial judge is a basic component of due process under the Fourteenth Amendment. *Caperton v. A.T. Massey Coal Co.*, 129 S.Ct. 2252, 2259 (2009); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-22 (1986); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). "Fairness requires the absence of actual bias in the trial of a case." *In re Murchison*, 349 U.S. 133, 136 (1955).

Not every situation appropriate for judicial disqualification, however, would be a due process violation were that judge to hear the case. *Lavoie*, 475 U.S. at 828. Questions concerning a judge's qualifications to preside over a case "are, in most cases, answered by common law, statute, or the professional standards of the bench and bar," not the Due Process Clause. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). To succeed on a judicial bias claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). A judge's failure to recuse himself results in a constitutional violation only where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton*, 129 S.Ct. at 2257.

Creech has not shown actual bias or a risk of bias that is constitutionally

MEMORANDUM DECISION AND ORDER- 51

intolerable.  The language to which Creech refers in the denial of the motion for new trial reflects the judge's belief that Creech had not shown any infirmities in the guilty plea.  The use of an exclamation point to underline that finding, while perhaps an excess of rhetorical zeal, does not change the analysis.  The judge's concern about not upsetting final death sentence judgments, "a tragic and extraordinary remedy," was not unreasonable.

For the same reasons that the Court has already expressed in denying the ineffective assistance of counsel claim, it finds again here that Creech has misconstrued Judge Newhouse's written decision in relation to mitigating evidence in the post-conviction matter.  The judge did not refuse to consider any evidence that Creech wanted to introduce as mitigating; instead, he simply did not believe that such evidence would carry much force in light of the strong aggravators.  This is not indicative of judicial bias, nor are his unfavorable or even inconsistent rulings on hearsay objections.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that unfavorable rulings alone almost never support a claim of bias or prejudice).

## Victim Impact Statement (Claim 28)

At the first sentencing hearing, Sheriff Eldon Palmer gave his opinion that because of Creech's history and his minimal prospects for rehabilitation, a death

sentence was "the only way we can go."  (State's Lodging B-5, p. 160.)  At the 1995 resentencing, the state court took judicial notice of all of the proceedings. Creech argues that Sheriff Palmer's testimony constituted an inadmissible statement about the appropriate punishment in a capital case.

In *Booth v. Maryland*, 482 U.S. 496 (1987), the Supreme Court held that the introduction of victim impact evidence at the sentencing phase of a capital trial violates the Eighth Amendment.  Four years later, in *Payne v. Tennessee*, 501 U.S. 808 (1991), the Court overruled *Booth* in part, holding that evidence regarding the personal characteristics of the victim and the impact of the victim's death on his or her family members was not *per se* inadmissible.  *Id*. at 829.  The *Payne* Court did not decide whether statements from family members about the crime, the defendant, or the appropriate punishment would also be admissible.  *Id*. at 829 n.2. Thus, the portion of *Booth* that prohibited that type of evidence has apparently survived *Payne*.

Sheriff Palmer was not a "victim" as that term was used in *Booth* and *Payne*. Rather, he was a State's witness called to testify primarily about his personal interaction with Creech and Creech's capacity to be rehabilitated given his past history.  But even if his opinion about the appropriateness of a death sentence was improper after *Booth* and *Payne*, the danger of prejudice is not the same when a

**MEMORANDUM DECISION AND ORDER- 53**

judge is the sentencer.  Then, it is assumed that the judge applied the law, and considered only evidence that he knew was admissible. *Landrigan v. Stewart*, 272 F.3d 1221, 1230 (9th Cir. 2001); *see also Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir.1998) (rejecting a similar argument as the judge can "separate the wheat from the chaff").  Creech is not entitled to habeas relief on Claim 28.

### Evidence Supporting the Prior Murder Conviction (Claim 33)

Creech alleges that "the only facts which the trial judge based its finding that petitioner was previously convicted of another murder was the hearsay listing of said convictions" in the PSI.  (Docket No. 131, p. 78.)  The Court has already found no constitutional error in the state district court's consideration of all the material in the record, including the PSI.

### Trial Court's Weighing and State Law (Claim 34)

This claim is nearly identical to Claim 15, and for the same reasons it is denied.

### CONCLUSION

The Court previously dismissed Claims 4 (in part), 7, 8, 10 (in part), 11 (in part), 13, 16, 17, 19, 22 (in part), 29-32, 35-45.  (Docket Nos. 173, 181.)

In this Memorandum Decision, the Court now denies or dismisses Claims 1-3, remainder of 4, 5, 6, 9, remainder of 10 and 11, 12, 14, 15, 18, 20, 21, remainder

MEMORANDUM DECISION AND ORDER- 54

of 22, 23-28, 33, and 34.  There being no claims left to be adjudicated, the case shall be dismissed.

## CERTIFICATE OF APPEALABILITY

In the event that Creech files a timely notice of appeal from the Court's Judgment, the Court on its own initiative has evaluated the claims within the Petition for suitability for the issuance of a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases.  A habeas petitioner cannot appeal unless a COA has been issued.  28 U.S.C. § 2253. A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Mindful that this is a capital case, the Court will certify an appeal over the Court's resolution of Claims 2, 3, 4 (but only to the extent that Creech alleges that he was deprived of his right to effective assistance of counsel at the 1995 resentencing proceeding), 25, and 27.  The Court has reviewed its other decisions

**MEMORANDUM DECISION AND ORDER- 55**

and orders in this case, and it does not find them to be reasonably debatable.  The COA shall be limited to the claims listed above.

Creech may seek to broaden the COA in the Ninth Circuit Court of Appeals, pursuant to Rule 22 of the Federal Rules of Appellate Procedure and Local Ninth Circuit Rule 22-1.  Creech is advised that he must still file a timely notice of appeal in this Court.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Second Amended Petition for Writ of Habeas Corpus is DENIED.

IT IS FURTHER ORDERED that this cause of action is DISMISSED with prejudice.

IT IS FURTHER ORDERED that the Court shall issue a Certificate of Appealability over the Court's resolution of Claims 2, 3, 4 (as limited herein), 25, and 27 in the Second Amended Petition, including the Court's decision to deny additional discovery and an evidentiary hearing on any of these claims, if applicable.  The Court shall not certify any other issue or claim for appeal.

IT IS FURTHER ORDERED that upon the filing of a timely notice of appeal in this case, and not until such time, the Clerk of Court shall forward the necessary paperwork to the Court of Appeals for the Ninth Circuit for the

**MEMORANDUM DECISION AND ORDER- 56**

docketing of an appeal in a civil case.



DATED:  **March 31, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER- 57**