**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS E. CREECH,<br>*Petitioner-Appellant*,<br><br>v.<br><br>TIM RICHARDSON, Warden,<br>*Respondent-Appellee.* | No. 10-99015<br><br>D.C. No.<br>1:99-cv-00224-BLW<br><br>OPINION |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted September 20, 2021
Pasadena, California

Filed July 20, 2022

Before:  William A. Fletcher, Jay S. Bybee, and
Morgan Christen, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY*

### Habeas Corpus/Death Penalty

The panel affirmed the district court's denial of Thomas Eugene Creech's second amended habeas corpus petition challenging his death sentence.

In 1981, while serving two life sentences for multiple convictions for first-degree murder, Creech beat a fellow inmate to death. After pleading guilty, he was sentenced to death in Idaho state court. Creech obtained federal habeas relief with respect to his sentence, and was resentenced to death in 1995. In a second petition, Creech thereafter unsuccessfully sought federal habeas relief in the district court.

The district court granted certificates of appealability (COAs) as to two issues.

First, Creech argued that the district court improperly denied part of Claim 4, in which he alleged that his attorneys provided ineffective assistance of counsel (IAC) at his 1995 resentencing by failing to investigate and present mitigation evidence in a timely and adequate fashion, failing to hire a mitigation specialist, and relying on an unqualified mental health expert. The Idaho Supreme Court rejected Creech's IAC claims at the 1995 resentencing, holding that Creek failed to prove either deficient performance or prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). In

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

denying habeas relief prior to this court's remand under *Martinez v. Ryan*, 566 U.S. 1 (2012), the district court reaffirmed that holding. The panel agreed with the district court that the Idaho Supreme Court reasonably found a lack of prejudice under the second prong of *Strickland*. The panel held further that under 28 U.S.C. § 2254(e)(2) the district court was correct in declining to hold an evidentiary hearing on the new evidence that Creech sought to introduce to bolster his IAC resentencing claim.

Second, Creech argued under *Martinez* that five allegedly procedurally defaulted sub-claims of IAC at the 1995 resentencing should be heard on the merits. Under *Martinez*, a federal habeas court may find cause to excuse a procedural default where (1) the underlying ineffective assistance claim is substantial; (2) the petitioner was not represented or had ineffective counsel during the state post-conviction review (PCR) proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding. Only the first and second requirements were at issue here, and in practical effect, the prejudice analysis under both of those requirements is the same—there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. At the time of the district court's decision after this court's *Martinez* remand, the court could consider new evidence supporting a claim of IAC by PCR counsel in determining whether a petitioner satisfies the requirements of *Martinez* without running afoul of 28 U.S.C. § 2254(e)(2) and *Cullen v. Pinholster*, 563 U.S. 170 (2011). After the panel heard oral argument, however, the Supreme Court decided *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), greatly restricting the

circumstances in which a federal habeas court deciding *Martinez* claims may consider evidence beyond that already contained in the state court record.  The district court considered all of the proffered new evidence and held that it was insufficient to transform into a new IAC claim the part of Claim 4 that alleged IAC during Creech's 1995 resentencing. The district court held that the sub-claims at issue in this appeal were therefore not procedurally defaulted new claims and that *Martinez* did not apply.  The panel wrote that even in the absence of *Ramirez*, it would have agreed with the district court because most of the new evidence introduced on federal habeas review in support of Creech's argument that he suffers from an organic disorder was duplicative of evidence introduced during the 1995 resentencing.  The panel reached the same result under *Ramirez*.  Because it could not consider the evidence presented for the first time to the district court, Creech's *Martinez* claim necessarily fails.

Creech sought to appeal four uncertified issues.

The panel denied a COA as to Creech's claims (1) that the district court erred in summarily denying his motion for reconsideration of its denial of his second habeas petition, (2) that the Idaho Supreme Court violated the Due Process Clause by refusing to allow him to withdraw his guilty plea prior to his first resentencing, and (3) that the duration of Creech's confinement for his murder constitutes cruel and unusual punishment in violation of the Eighth Amendment.

The panel granted a COA as to Creech's argument under *Magwood v. Patterson*, 561 U.S. 320 (2010), that claims in his second federal habeas petition attacking his guilty plea are not "second or successive" under 28 U.S.C. § 2244(b) and should be decided on the merits.  Based on *Magwood* and

later cases decided by this circuit, the panel concluded that because Creech's original sentence was vacated and a new sentence was imposed, the claims are not barred as second or successive. Rather than remand the claims to the district court, the panel denied them, holding that the Idaho courts (1) did not unreasonably find Creech's arguments as to trial counsel's purported conflict of interest to be without merit, (2) did not unreasonably conclude that Creech failed to show that trial counsel should have moved to withdraw his guilty plea on the ground that Creech was incompetent, (3) did not unreasonably conclude that Creech failed to show that IAC at the guilt phase on the basis of trial counsel's purported failure to communicate with him, and (4) did not unreasonably reject Creech's claim that counsel's failure to investigate his purported history of violence led him to plead guilty rather than insist on going to trial on a theory of self-defense.

## COUNSEL

Jonah J. Horwitz (argued), Bruce D. Livingston, and Teresa A. Hampton, Federal Defender Services of Idaho, Capital Habeas Unit, Boise, Idaho; Denise Young, Tucson, Arizona; for Petitioner-Appellant.

L. LaMont Anderson (argued), Chief, Capital Litigation Unit; Lawrence G. Wasden, Attorney General; Attorney General's Office, Boise, Idaho; for Respondent-Appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Petitioner-Appellant Thomas Eugene Creech appeals the denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. In 1981, while serving two life sentences for multiple convictions of first-degree murder, Creech beat a fellow inmate to death. After pleading guilty, he was sentenced to death in Idaho state court. Creech obtained federal habeas relief with respect to his sentence. He was resentenced to death in 1995. After the reimposition of the death penalty in 1995, in a second petition Creech unsuccessfully sought federal habeas relief in federal district court.

The district court granted certificates of appealability ("COAs") as to two issues, and Creech appeals both of those issues. First, Creech argues that the district court improperly denied part of Claim 4 of his habeas petition, in which he alleges that his attorneys provided ineffective assistance of counsel ("IAC") at his 1995 resentencing. Second, Creech argues under *Martinez v. Ryan*, 566 U.S. 1 (2012), that five allegedly procedurally defaulted sub-claims of IAC at the 1995 resentencing should be heard on the merits.

In addition, Creech seeks to appeal four uncertified issues. First, Creech argues that the district court erred in summarily denying reconsideration of its decision denying relief under *Martinez*. Second, Creech argues that the Idaho courts unconstitutionally prevented him from withdrawing his guilty plea. Third, Creech argues under *Magwood v. Patterson*, 561 U.S. 320 (2010), that claims in his second federal habeas petition are not "second or successive" under 28 U.S.C. § 2244(b) and should be decided on the merits. Fourth,

Creech argues under *Lackey v. Texas*, 514 U.S. 1045 (1995), that we should remand this case for the district court to determine whether the duration of his confinement while awaiting execution constitutes cruel and unusual punishment under the Eighth Amendment.

We affirm the district court on the two certified issues. We grant a COA as to the third uncertified issue and affirm the district court on that issue. We deny COAs as to the first, second, and fourth uncertified issues.

## I.  Background

### A.  The Crime and Guilty Plea

While serving life sentences for first-degree murder, Creech beat to death a fellow inmate, David Dale Jensen, in the maximum security tier of the Idaho State Correctional Institution. Jensen, in prison for stealing a car, was twenty-three years old and suffered from physical and mental disabilities. He was partially paralyzed, and a plastic plate had been surgically embedded in his skull.

Creech attacked Jensen, repeatedly hitting him in the head with a battery-filled sock until the plate embedded in his skull shattered, his skull caved in, and blood was splashed on the floors and walls. *State v. Creech* ("*Creech I*"), 670 P.2d 463, 465 (Idaho 1983). Creech took breaks during the beating. After the sock broke and the batteries fell out, Creech kicked Jensen in the throat while Jensen lay sprawled on the floor. Jensen was found by a prison guard and taken to the hospital. He died on the operating table the same day. Creech had four prior murder convictions when he killed Jensen. Creech claimed responsibility for killing twenty-six people, and the

bodies of eleven of his victims were later recovered in seven states.

Creech was charged with first-degree murder for killing Jensen. Represented by the Idaho Public Defender's office, he initially entered a plea of not guilty. He later wrote a letter to the trial judge, Judge Robert Newhouse, requesting a change of plea hearing.

Judge Newhouse held a change of plea hearing in response to Creech's letter. Creech's attorney, Rolf Kehne, informed the court that Creech was pleading guilty against his advice and requested a five-day continuance. Creech indicated he did not want a continuance. Kehne then asked to withdraw from representation on the ground that Creech refused to follow his legal advice. Judge Newhouse denied the request, stating, "I think he should at least have counsel to inform him of the law and what's going on." After the prosecution summarized the evidence it was prepared to present at trial, and after a plea colloquy, Judge Newhouse accepted Creech's guilty plea and ordered a presentence report.

### B. Initial Sentencing Hearings

Creech's first sentencing hearing was held in January 1982. The prosecution and the defense each presented expert mental health testimony. Dr. Floyd LaMarr Heyrend, a psychiatrist with training in neurology who had served as a witness for Creech in one of Creech's prior murder trials, appeared for the prosecution. Dr. Heyrend had testified in the prior trial that Creech had antisocial personality disorder and acted impulsively without adequate forethought and sufficient consideration for others, but that Creech could appreciate the

wrongfulness of his conduct and conform that conduct to the requirements of the law. At Creech's 1982 sentencing hearing, Dr. Heyrend testified that Creech could presently "recognize the wrongfulness of his behavior," but also that there was some evidence that Creech exhibited schizotypal thinking and could drift into florid psychosis during times of stress. Based on prior testing in 1974 and 1975 and an electroencephalogram conducted the week before his testimony, Dr. Heyrend opined that Creech did not suffer from organic brain disorder.

Psychologist Dr. John Stoner testified for Creech. He testified that Creech had antisocial personality disorder, schizotypal personality disorder, and borderline personality disorder. Dr. Stoner testified that Creech's strikingly uneven performance on different types of mental tests "strongly suggest[ed] the presence of an organic brain disorder." He testified that Creech would have been able to appreciate the wrongfulness of his actions at the beginning of the encounter with Jensen, but that, once the attack commenced, Creech had "a rage reaction during which he would neither appreciate the wrongfulness nor be able to conform his behavior; that is, he went into a self-maintaining assaulting rage." Dr. Stoner testified that individuals with similar disorders to Creech had no prospects of therapeutic rehabilitation.

Creech took the stand on his own behalf. He testified that he had killed twenty-six people, a number of whom he believed had gang-raped his deceased former wife. He testified that two other inmates had asked him "to kill Jensen for money," and another inmate offered to help him escape from the penitentiary in exchange for Jensen's killing. Creech testified that he gave someone a knife to give to Jensen; that Jensen then attacked Creech with the knife as an

effort to impress other inmates who "wouldn't accept him
because he was partially crippled"; and that Creech then
killed Jensen.  When asked on cross-examination what
sentence he wanted Judge Newhouse to give him, Creech
replied, "I want him to sentence me to death."

On January 25, 1982, in a written decision, Judge
Newhouse sentenced Creech to death.  He found in mitigation
that Creech had been justified in protecting himself against an
unprovoked attack by Jensen.  However, he also found that
Jensen, "a young, inexperienced, handicapped man" with
"both physical and mental impairments," had been "under the
complete domination and control" of Creech once the attack
began, and that Jensen's murder, "once commenced, appears
to have been an intentional, calculated act."  Judge Newhouse
found that five statutory aggravating factors under Idaho
Code § 19-2515 had been proven beyond a reasonable doubt:
(1) Creech had previously been convicted of four first-degree
murders—two in 1976, one in 1979, and one in 1980;
(2) Creech "exhibited utter disregard for human life" during
Jensen's murder; (3) Jensen's murder came within the
definition of Idaho Code statutory aggravating factor § 18-
4003(c) because Creech was serving a first-degree murder
sentence at the time of the crime; (4) Jensen's murder came
within the definition of Idaho Code statutory aggravating
factor § 18-4003(e) because Creech killed Jensen while both
were incarcerated in the Idaho State Correctional Institution;
and (5) Creech, "by prior conduct or conduct in the
commission of the murder at hand . . . exhibited a propensity
to commit murder which will probably constitute a continuing
threat to society."

On February 24, 1983, the Idaho Supreme Court vacated
Creech's death sentence because it had not been imposed in

open court in the presence of Creech and his counsel as required by Idaho law. On remand, Judge Newhouse held a hearing at which Creech and his counsel were present. Judge Newhouse read his previous findings into the record and again sentenced Creech to death. Judge Newhouse did not permit Creech to present additional mitigation evidence at the second sentencing hearing. On May 23, 1983, a divided Idaho Supreme Court affirmed. *Creech I*, 670 P.2d at 465.

### C. First State Post-Conviction Review Proceedings

In state court post-conviction review ("PCR") proceedings before Judge Newhouse, Creech moved to withdraw his guilty plea. He asked for no other relief. *See State v. Creech* ("*Creech II*"), 710 P.2d 502, 504 (Idaho 1985). During a four-day evidentiary hearing in February 1984, Creech testified extensively about the details of Jensen's death and his reasons for pleading guilty. On March 6, 1984, Judge Newhouse denied Creech's motion to withdraw his plea. The Idaho Supreme Court affirmed. *Id.* at 507.

### D. First Federal Habeas Proceedings

Creech sought federal habeas corpus under 28 U.S.C. § 2254. Our court granted relief with respect to Creech's sentence. We held: (1) the state trial court committed constitutional error when it refused to allow Creech to present additional mitigation evidence at his second sentencing hearing; (2) the trial court applied two statutory aggravating factors, Idaho Code § 18-4003(c) and (e), without making the requisite findings of specific intent to kill; and (3) the trial court applied an unconstitutionally vague "utter disregard for human life" aggravating factor. *Creech v. Arave* ("*Creech*

*III*"), 947 F.2d 873, 881–85, 888 (9th Cir. 1991). The Supreme Court reversed our third holding. It held that the Idaho Supreme Court's limiting construction of Idaho's "utter disregard" aggravating factor saved the instruction from unconstitutionality. *Arave v. Creech* ("*Creech IV*"), 507 U.S. 463, 471 (1993). The Court did not disturb our other two holdings, leaving intact our remand for resentencing. *Id.* at 478–79.

### E. Resentencing Hearing in 1995

Although no longer a public defender, Kehne represented Creech at his third sentencing hearing, assisted by his law partner John Adams. Kehne and Adams obtained several continuances in order to investigate and prepare for the hearing. A five-day resentencing hearing was held before Judge Newhouse in March and April of 1995.

The defense called four witnesses, including Creech, at the hearing. Creech's sister, Virginia Plageman, and her husband, Michael, each testified about Creech's personality, family background, and childhood. Virginia discussed the family's mental health problems, including depression, social withdrawal, and anger management. She testified that Creech's maternal grandparents were cousins and that Creech's mother "left society" after her youngest son died at the age of thirteen months. Virginia also described Creech's three surviving brothers, two of whom had been convicted of murder or manslaughter.

Virginia testified that Creech's childhood was characterized by poverty and physical abuse, but she specified that the abuse was not sexual. She testified that, on one occasion, Creech fell down a staircase onto concrete; was

knocked unconscious; bled from his nose, mouth, and possibly ears; and was hospitalized for a few days before their mother took him home against medical advice. Virginia testified that Creech had experienced escalating problems beginning in early childhood, and that he struggled to discern the difference between right and wrong. She testified that, in recent years, Creech had calmed down and had become more loving and kind. She testified that Creech's wife, whom he had married after his conviction in this case, had been a positive influence on him.

Dr. Steven Brown, a clinical psychologist, also testified for Creech. Dr. Brown had interviewed Creech twice and had reviewed the updated presentence reports, psychiatric records, and hospital records. He testified that Creech scored in the ninety-sixth percentile for psychopathic traits when compared to the general prison population. He testified that Creech was a "prototypical or classic psychopath, and that if any psychopaths have a biological predisposition," then "somebody who has such an extreme form as Mr. Creech probably does." Dr. Brown noted the significance of the fact that two of Creech's brothers were also murderers: "The fact that two of his brothers are murderers is strong anecdotal evidence that there's a genetic contribution in his family. It's fairly outstanding that there are three murderers in one family." Though Creech's electromyography test results were within normal limits and there was no direct evidence of a biological basis for Creech's condition, Dr. Brown testified that "there's probably a biological contribution."

The State called six witnesses whose testimony focused on Creech's conduct in prison and whether he posed a security concern.

On April 17, 1995, Judge Newhouse again sentenced Creech to death. He found the following facts in mitigation: (1) Creech was forty-four years old, and most violent acts are committed by males younger than thirty; (2) Creech completed high school through eleventh grade and had acquired his GED; (3) Creech took pride in cooperating with law enforcement; (4) Creech was creative, writing songs, poetry, and prose and playing the guitar; (5) Creech's current wife had been a positive influence on him; and (6) Creech may be biologically predisposed to violence.

Judge Newhouse found the same five statutory aggravating factors he had found in 1982. However, this time, in discussing aggravating factors under Idaho Code § 18-4003(c) and (e), he found that Creech had attacked Jensen with specific intent to kill. Judge Newhouse noted that "[Creech] indicates an intention to commit further murders if he is ever released" and that "[a]nything less than total isolation would give rise to a substantial chance of the defendant killing again." He concluded, "The protection of society demands that Thomas Eugene Creech receive the death penalty."

F.  Second State Post-Conviction Review Proceedings

During Creech's second state court PCR proceedings before Judge Newhouse, Creech was represented by Idaho Public Defender August Cahill. Creech claimed that Kehne and Adams had been ineffective at his resentencing hearing in 1995. After several continuances, a four-day evidentiary hearing was held in October 1996. Creech presented testimony from his ex-wife Emma Jean Asbrock and their daughter Shelley Renae Creech. Asbrock and Shelley testified that Creech may have suffered sexual abuse at the

hands of his aunt and uncle when he was a child. Shelley also discussed her own and her mother's mental health difficulties. Kehne and Adams took the stand, testifying that they had been ineffective at Creech's 1995 resentencing hearing. Judge Newhouse denied relief, finding that "Mr. Kehne ha[d] performed with outstanding competence in a case where the chance for success was extremely remote." After consolidating Creech's appeal from the trial court's judgment with his appeal from the denial of PCR relief, the Idaho Supreme Court affirmed. *State v. Creech* ("*Creech V*"), 966 P.2d 1, 23 (Idaho 1998).

### G.  Second Federal Habeas Proceedings

Creech timely filed a second § 2254 habeas petition on January 20, 2000. Proceedings were stayed until January 2005 while Creech unsuccessfully pursued other state post-conviction relief. On March 24, 2005, Creech filed a second amended petition, the operative pleading in this appeal.

In March 2006, the district court found that certain claims, including some IAC claims, had been procedurally defaulted. It permitted discovery with respect to these claims but warned that the claims "will be dismissed unless, after a period of limited discovery, Petitioner can show cause and prejudice to excuse any default." Procedural default in PCR proceedings was then governed by the cause and prejudice standard of *Coleman v. Thompson*, 501 U.S. 722 (1991). The court allowed mental health experts and a mitigation specialist to meet with Creech.

Creech filed a motion for an evidentiary hearing in August 2007. Creech proffered additional mitigation evidence in support of his motion. That evidence provided

substantial additional support for the conclusion that Creech suffered from an organic brain disorder. In March 2008, the district court denied Creech's motion for an evidentiary hearing.

The district court held that 28 U.S.C. § 2254(e)(2) foreclosed an evidentiary hearing on the additional mitigating evidence Creech submitted in support of his motion. The court nonetheless considered the additional evidence on the merits, concluding that "[m]uch of this information was already before the state courts, albeit in a less specific way." The court wrote that the "state courts already assumed the truth of Dr. Brown's testimony in 1995 that there could be a biological aspect to Creech's violent behavior, and that fact was not significant to the outcome." In the court's view, "[a] neurologist's opinion that Creech has brain damage may be more specific than Dr. Brown's testimony, but it would have provided only a modest counterweight to the heavy aggravating factors."

The district court dismissed Creech's second amended habeas petition with prejudice on March 31, 2010. The court granted COAs on five claims. One of the COAs authorized an appeal from the denial of the part of Claim 4 that alleged IAC at Creech's resentencing in 1995. Creech timely appealed four of the five claims as to which COAs had been granted, including the district court's denial of the part of Claim 4 addressed to IAC at the 1995 resentencing.

After oral argument on appeal, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), holding that IAC by PCR counsel in an initial-review PCR proceeding can excuse a procedural default of a claim of IAC of trial counsel. We remanded to the district court to consider, in light of

*Martinez*, whether counsel had been ineffective during Creech's second PCR proceeding in failing to present certain sub-claims under Claim 4. All of the sub-claims at issue alleged IAC at the 1995 resentencing.

Seventeen possibly defaulted sub-claims under Claim 4 were before the district court on remand. The district court held that Creech waived all but six of the sub-claims by failing to argue them. Of the remaining six, the district court found that only one, contained in ¶ 100(a), had been procedurally defaulted. That sub-claim was that trial counsel had failed to "prepare, develop, and present a coherent sentencing strategy" at the 1995 resentencing. The district court held that PCR counsel had not performed deficiently in failing to present that sub-claim, and, in the alternative, that there was no prejudice resulting from the failure to present it. The district court held that the other five sub-claims, contained in ¶¶ 100(b), (d), (j), (*o*)(iii) and (*o*)(iv), had not been procedurally defaulted by PCR counsel. Rather, it held, they had been presented by Creech's counsel to the PCR court, had been decided adversely by that court, and had been decided adversely by the federal district court.

Creech presented additional evidence on remand. Creech's counsel submitted various medical records, as well as a declaration that she had consulted with a neuropsychologist who had concluded, based on those medical records, that Creech may have suffered from an organic brain disorder. Properly considering this new evidence under the law in effect at the time, the district court concluded that it was comparable to the evidence submitted to the district court in support of Creech's pre-remand motion for an evidentiary hearing, and that it added little to the information that had been before the state PCR court. The

court wrote, "Over the course of the two sentencing hearings and the state postconviction proceedings, it had been well-established that Creech might, indeed, have some . . . biological or genetic component that contributed to his antisocial and violent behavior . . . ."

The district court on remand held that the entirety of the additional evidence of IAC that Creech sought to present in district court, both before and after our *Martinez* remand, was insufficient under *Dickens v. Ryan*, 740 F.3d 1302, 1318–19 (9th Cir. 2014) (en banc), to "fundamentally alter[]" these five sub-claims and thereby to transform them into unexhausted and procedurally defaulted new claims. The court wrote, "The evidence that Petitioner brings forward in this Court, although more specific, adds little substance to the evidence that the state courts considered when adjudicating Petitioner's mitigation-based IATC claims. The evidence submitted for the first time in this Court simply does not substantially improve the evidentiary posture of those claims." Because the sub-claims had not been transformed into procedurally defaulted new claims, *Martinez* did not apply.

The district court reaffirmed its previous grant of a COA as to the part of Claim 4 alleging IAC at the 1995 resentencing. It granted a new COA as to its denial of Creech's request for relief under *Martinez* as to the five sub-claims contained in ¶¶ 100(b), (d), (j), (*o*)(iii) and (*o*)(iv). It denied a COA as to any other issue.

Creech filed a motion for reconsideration. He proffered additional new evidence that he argued fundamentally altered the five sub-claims and transformed them into new claims. The district court denied the motion for reconsideration,

refusing to consider the additional new evidence on the ground that it could, and should, have been presented as part of the initial proceeding on remand.  The district court denied a COA as to this issue.

Rather than appeal on all of the grounds on which he previously appealed to this court, Creech now appeals only the two certified issues and four uncertified issues described at the beginning of our opinion.

## II.  Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 2253.  We review de novo a district court's dismissal of a habeas petition.  *Runningeagle v. Ryan*, 825 F.3d 970, 978 (9th Cir. 2016) (citing *Sexton v. Cozner*, 679 F.3d 1150, 1153 (9th Cir. 2012)).  We review for clear error the district court's findings of fact.  *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (citing *Riley v. Payne*, 352 F.3d 1313, 1317 (9th Cir. 2003)).  We review for abuse of discretion the denial of a request for an evidentiary hearing.  *Stanley v. Schriro*, 598 F.3d 612, 617 (9th Cir. 2010) (citing *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007)).

We may grant habeas relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA") only if the state court's decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of the

Supreme Court's decisions as of the time of the relevant state-court decision."  *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

State-court findings of fact are presumed to be correct. This presumption can be rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III.  Discussion

As a preliminary matter, relying on *Browning v. Baker*, 875 F.3d 444 (9th Cir. 2017), Creech argues that we should broaden the COA on the first issue—IAC at the 1995 resentencing under Claim 4—to include every claim and sub-claim addressed to that issue.  We wrote in *Browning*:

> While an individual claiming IAC "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," the court considers counsel's conduct *as a whole* to determine whether it was constitutionally adequate[.]  The district court distorted this inquiry by separating Browning's IAC argument into individual "claims" of IAC corresponding to particular instances of [defense attorney] Pike's conduct.  This approach was misguided.  Rather, the IAC portion of the COA should have been crafted at a higher level of generality.

*Id.* at 471 (citations omitted).

In the case before us, the question at issue was whether Creech received IAC during his 1995 resentencing. *Browning* was decided after the district court's decisions, while the case was on appeal to us. If *Browning* had been available to the district court, it might have used slightly different language in order to make clear that it was analyzing Creech's "counsel's conduct *as a whole* to determine whether it was constitutionally adequate." *Id.* But it is clear that this is what the district court did.

In its initial decision denying habeas relief, the district court headed its analysis of Creech's IAC claim under Claim 4 as "Ineffective Assistance of Counsel at the Resentencing (Claim 4, ¶¶ 100(b)(d)(j)(o)(q))". Each of the specified subparagraphs of ¶ 100 alleged instances of IAC during Creech's 1995 resentencing. The court then spent thirteen pages analyzing the IAC resentencing claim as a whole, considering the entirety of the attorney conduct of which Creech complained. The initial COA granted by the district court was similarly encompassing. Claim 4 had alleged IAC of trial counsel in many respects, including but not limited to IAC at the 1995 resentencing. The court granted a narrowed COA for Claim 4, but included in the COA all of the attorney conduct relevant to the 1995 resentencing. The court wrote: "[T]he Court will certify an appeal over the Court's resolution of Claim[] . . . 4 (but only to the extent that Creech alleges that he was deprived of his right to effective assistance of counsel at the 1995 resentencing proceeding) . . . ."

In its decision denying habeas after our remand under *Martinez*, reaffirming its previous grant of a COA for the part of Claim 4 that alleged IAC at the 1995 resentencing, the court used much of the same wording as it had used

previously in granting the COA for this part of Claim 4. The court wrote, "The Court reaffirms its previous grant of a certificate of appealability with respect to its resolution of the merits of the non-defaulted aspects of Claim[] . . . 4 (to the extent Creech alleges that he was deprived of his right to the effective assistance of counsel at the 1995 resentencing proceeding) . . . ."

In our *Martinez* remand order, we instructed the district court to consider "whether any of Creech's ineffective assistance of counsel *claims* previously found procedurally defaulted" may be heard under *Martinez*. Faithful to our remand order, the district court discussed each of Creech's remanded IAC contentions, calling them "sub-claims." In holding that sub-claims ¶¶ 100(b), (d), (j), (*o*)(iii) and (*o*)(iv) were not procedurally defaulted within the meaning of *Martinez*, the district court did not consider these sub-claims independently. Rather, it considered them together, in the context of the entirety of Creech's claim of IAC at resentencing.

### A.  Certified Claims

#### 1. Claim 4: Ineffective Assistance of Counsel at the 1995 Resentencing

Creech argues under Claim 4 that his trial counsel was ineffective during his 1995 sentencing proceeding for failing to investigate and present mitigation evidence in a timely and adequate fashion, failing to hire a mitigation specialist, and relying on an unqualified mental health expert. The Idaho Supreme Court rejected Creech's IAC claims at the 1995 resentencing, holding that Creech failed to prove either deficient performance or prejudice under *Strickland v.*

*Washington*, 466 U.S. 668 (1984). *Creech V*, 966 P.2d at 17–21. In denying habeas relief to Creech prior to our remand under *Martinez*, the district court held that the Idaho Supreme Court had reasonably concluded that Creech failed to demonstrate prejudice under *Strickland*. On remand from our court under *Martinez*, the district court reaffirmed that holding. We agree with the district court.

The two-part standard for evaluating IAC claims is set forth in *Strickland*. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. In order to minimize "the distorting effects of hindsight," courts evaluating IAC claims "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Counsel's performance must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

Second, the defendant must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

result." *Id.* at 686. We "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). States must be given wide latitude in applying rules of general applicability such as the *Strickland* standard. *Cf. Yarborough v. Alvarado*, 541 U.S. 652, 663–64 (2004). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). Our review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

We agree with the district court that the Idaho Supreme Court reasonably found a lack of prejudice under the second prong of *Strickland*. The district court noted that Creech's case was "far from a blank slate" when it remanded for the 1995 resentencing. At the 1995 resentencing hearing, Judge Newhouse took judicial notice of the entire record. That record included the testimony of Dr. Stoner at the first sentencing hearing and the testimony of Dr. Brown at the 1995 resentencing hearing. It also included a voluminous presentence report, updated at Kehne's request, that contained substantial mental health evidence. Creech's counsel at the 1995 hearing supplemented the record with character reference letters and testimony regarding Creech's family background and mental health history; evidence of the

physical and verbal abuse Creech suffered as a child; evidence of a serious childhood head injury; evidence of the positive influence of Creech's wife; expert testimony that there was likely a biological basis for Creech's violent tendencies; and evidence of Creech's progress in becoming a calmer, less angry person.

The only new mitigation evidence that was presented in the state PCR proceeding in 1996 was the testimony of Asbrock, Creech's ex-wife, and Shelley, his daughter. Asbrock testified that Creech had been the victim of childhood sexual abuse, but her testimony was vague as to the details. When asked about abuse that occurred in Creech's childhood home, Asbrock responded, "Yes. I think a lot of this is a big part, what happened somewhat in abuse and incest. You keep—. . . You keep getting abused and abused, and I don't—I think someone should have put a stop to it." As her testimony continued, Asbrock indicated Creech had been sexually abused by his aunt and uncle. When asked the name of the uncle, she said, "Aunt Thelma, in the bathtub—I can't remember the man's name. But I know what he did. It wasn't right to continue that over and over." She indicated that she knew about the abuse because Creech and others told her twenty-five or thirty years earlier.

Shelley's testimony was less specific than her mother's. She stated in her direct examination:

> Q. Have you heard the same sorts of things about Tom's family that we heard today from your mom?
>
> A. I've heard a lot of stories.

Q. Okay.

A. And on that issue, I had letters. But I don't know. I lost everything. I don't know. You know, I know it was in Mount Orab. I don't know.

Q. And these were letters that your dad wrote telling you about things that had happened to him as a child?

A. Yeah.

Q. And that he had been abused as a child?

A. Yeah.

Q. And that there had been problems in his—in his home when he was growing up?

A. And that's why I could write my dad and let him know things that had happened. And I couldn't even go to nobody else.

Asbrock's and Shelley's testimony was undermined by their own mental health problems. Asbrock had suffered some kind of breakdown at the airport immediately prior to coming to court to give her testimony, and she was frequently incoherent while on the stand. Shelley testified that she had been diagnosed with schizophrenia, depression, and borderline personality disorder. She became agitated and confused on cross-examination.

To establish prejudice under Strickland, any additional mitigation evidence presented at the PCR IAC hearing, together with the mitigation evidence already in the record, must outweigh the aggravating evidence in the record. That aggravating evidence included Jensen's brutal murder in the prison, Creech's four prior murder convictions, and Creech's testimony that he had committed many other murders and intended to kill more people if given the opportunity. We agree with the district court that the state court reasonably concluded that there was no reasonable probability that calling Asbrock and Shelley as witnesses at the 1995 resentencing hearing would have changed the outcome of that proceeding. *See*, *e.g.*, *Pinholster*, 563 U.S. at 202 ("Given what little additional mitigating evidence Pinholster presented in state habeas, we cannot say that the California Supreme Court's [denial of his IAC claim] was unreasonable."); *Bobby v. Van Hook*, 558 U.S. 4, 12 (2009) (per curiam) (holding no prejudice where only two potential witnesses not interviewed by defense counsel would have added any new information of value and the information provided only "minor additional details" about defendant's background); *King v. Schriro*, 537 F.3d 1062, 1074 (9th Cir. 2008) (holding no prejudice where defendant did not present evidence of what a more complete social and medical history investigation would have revealed).

As noted above, Creech had sought to "bolster" his IAC resentencing claim by introducing in the district court evidence that had never been presented to the state court. The district court held that an evidentiary hearing on this proffered new evidence was precluded by 28 U.S.C. § 2254(e)(2). In the alternative, the court held, further, that if it were to ignore the limitation of evidentiary hearings contained in § 2254(e)(2) and were to consider on the merits

the evidence not presented to the state PCR court, it would nonetheless deny relief.  *Inter alia*, the court wrote, "A neurologist's opinion that Creech has brain damage may be more specific than Dr. Brown's testimony, but it would have provided only a modest counterweight to the heavy aggravating factors . . . ."

We hold that the district court was correct in denying relief on Creech's IAC resentencing claim under Claim 4. We hold, further, under § 2254(e)(2) that the district court was correct in declining to hold an evidentiary hearing on the new evidence that Creech sought to introduce to bolster his IAC resentencing claim.

### 2.  *Martinez* Remand:  Five Allegedly Procedurally Defaulted Sub-claims

#### a.  *Martinez*

In *Martinez*, the Supreme Court announced an equitable exception to the longstanding rule of *Coleman v. Thompson* that ineffective assistance of PCR counsel cannot establish cause to overcome a procedural default.  The Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17.  The Court refined the *Martinez* inquiry in *Trevino v. Thaler*, 569 U.S. 413 (2013).  Under *Martinez*, a federal habeas court may find cause to excuse a procedural default where:

> (1) the underlying ineffective assistance of trial counsel claim is "substantial"; (2) the petitioner was not represented or had ineffective counsel during the PCR proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding.

*Dickens*, 740 F.3d at 1319 (citing *Trevino*, 569 U.S. at 423).

A petitioner must satisfy all four requirements, *id.*, but only the first and second requirements are at issue here.  With respect to the first requirement, a petitioner must "demonstrate that the underlying [IAC] claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).  "Thus, there must be a substantial showing of a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Runningeagle*, 825 F.3d at 982 (quoting *Strickland*, 466 U.S. at 694).  To satisfy the second requirement, the petitioner must demonstrate that PCR counsel "was ineffective under the standards of *Strickland*," which requires a petitioner to "show not only that PCR counsel performed deficiently, but also that . . . 'there was a reasonable probability that, absent the deficient performance, the result of the post-conviction

proceedings would have been different.'" *Martinez*, 566 U.S. at 14; *Runningeagle*, 825 F.3d at 982 (quoting *Pizzuto v. Ramirez*, 783 F.3d 1171, 1178 (9th Cir. 2015)).

In practical effect, the prejudice analysis under both the first and second *Martinez* requirements is the same. Under both requirements, the required analysis is the prejudice prong of *Strickland*: There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Runningeagle*, 825 F.3d at 982 (reciting the *Strickland* prejudice standard under both the first and second *Martinez* requirements); *cf. Detrich v. Ryan*, 740 F.3d 1237, 1245–46 (9th Cir. 2013) (en banc) (plurality opinion) (interpreting the first and second *Martinez* requirements differently).

Pursuant to our remand under *Martinez*, the district court considered six sub-claims of Claim 4, all of which alleged IAC at the 1995 resentencing proceeding. Creech appeals its decision as to five of those sub-claims. At the time of the district court's decision after our *Martinez* remand, the court could consider new evidence supporting a claim of IAC by PCR counsel in determining whether a petitioner satisfies the requirements of *Martinez* without running afoul of § 2254(e)(2) and *Pinholster*. *See Dickens*, 740 F.3d at 1320. After we heard oral argument, however, the Supreme Court decided *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022), greatly restricting the circumstances in which a federal habeas court deciding *Martinez* claims may consider evidence beyond that already contained in the state court record.

b. Sub-claims ¶¶ 100(b), (d), (j), (*o*)(iii) and (*o*)(iv)

All of the sub-claims included in the district court's COA are addressed to IAC at Creech's 1995 resentencing. Sub-claim ¶ 100(b) alleges that post-conviction counsel failed to conduct an adequate investigation of matters in mitigation, including Creech's mental health and that of his family. Sub-claim ¶ 100(d) alleges failure to retain qualified mental health experts to address issues of Creech's mental health. Sub-claim ¶ 100(j) alleges failure to investigate Creech's mental health issues including the effect of head injuries. Sub-claim ¶ 100(*o*)(iii) alleges failure to present mitigating evidence of the mental condition of Creech's daughter, which could support claims of organic causes for Creech's aggressive behavior. Finally, sub-claim ¶ 100(*o*)(iv) alleges failure to present evidence of severe mental illness of Creech's mother.

The district court concluded that each of these sub-claims had been presented to, and exhausted in, the state court as part of Creech's IAC claim under Claim 4 that his counsel had been ineffective at his 1995 resentencing. Prior to the Supreme Court's decision in *Ramirez*, a claim previously presented to a state court could become a new unexhausted (and procedurally defaulted) claim if new evidence presented to the district court under *Martinez* either "fundamentally alter[ed] the legal claim already considered by the state courts" or "place[d] the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Dickens*, 740 F.3d at 1318 (citations omitted) (first quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); and then quoting *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988)). The district court recognized that, if a previously exhausted claim was supplemented on federal habeas with sufficient new supporting evidence, the claim could be

transformed into a new, unexhausted, and procedurally defaulted claim.

As recounted above, the district court considered all of the proffered new evidence and held that it was insufficient to transform into a new IAC claim the part of Claim 4 that alleged IAC during Creech's 1995 resentencing. The court held that sub-claims ¶¶ 100(b), (d), (j), (*o*)(iii), and (*o*)(iv) were therefore not procedurally defaulted new claims and that *Martinez* did not apply.

Even in the absence of *Ramirez*, we would have agreed with the district court. Most of the new evidence introduced on federal habeas review in support of Creech's argument that he suffers from an organic disorder was duplicative of evidence introduced during the 1995 resentencing. Dr. Brown had testified at Creech's 1995 resentencing hearing that it was highly unusual that Creech and his two brothers were all murderers, and that there was "probably a biological contribution" to Creech's behavior. Dr. Stoner had testified at Creech's original sentencing hearing that Creech's performance on tests "strongly suggest[ed] . . . an organic brain disorder." Considering the mitigation evidence as a whole, *see Browning*, 875 F.3d at 471, the district court correctly concluded,

> The evidence that Petitioner brings forward in this Court, although more specific, adds little substance to the evidence that the state courts considered when adjudicating Petitioner's mitigation-based IATC claims. The evidence submitted for the first time in this Court simply does not substantially improve the evidentiary posture of those claims.

Under *Ramirez*, we reach the same result. Because we cannot consider the evidence presented for the first time to the district court, Creech's *Martinez* claim necessarily fails.

## B. Uncertified Claims

Creech seeks a COA for four uncertified claims. For a COA to issue, Creech must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

### 1. Summary Denial of Reconsideration

Creech seeks a COA on his claim that the district court erred in summarily denying his motion for reconsideration of its denial of his second habeas petition. In his motion for reconsideration, Creech sought to present additional mitigating evidence beyond the new evidence he had already presented to the district court in connection with his second petition. In denying his motion for reconsideration, the district court held, *inter alia*, that even if the court were to consider the new evidence presented in connection with the motion for reconsideration as if it were part of Creech's initial *Martinez* proceeding, there was no prejudice. We deny a COA. Under *Ramirez*, we may not consider the evidence Creech submitted in support of his motion for reconsideration. He therefore cannot demonstrate prejudice as a result of PCR counsel's performance as required by *Martinez*.

### 2. Withdrawal of Guilty Plea

Creech seeks a COA for his claim that the Idaho Supreme Court violated the Due Process Clause by refusing to allow him to withdraw his guilty plea prior to his first resentencing. The district court denied relief on this claim, correctly concluding that Creech's argument was, in effect, that the Idaho Supreme Court had incorrectly decided a question of state law. *See Creech V*, 966 P.2d at 21–22. The Idaho Court's construction of its own law was not "an obvious subterfuge to evade the consideration of a federal issue," and we are bound by its holding that Creech's withdrawal claim is barred by state preclusion law. *See Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994). We therefore decline to grant a COA for this claim.

### 3. *Magwood* Claims

Creech seeks a COA for multiple claims attacking his guilty plea. He refers to these claims as "*Magwood* claims," invoking the Supreme Court's decision in *Magwood v. Patterson*, 561 U.S. 320 (2010). These claims were exhausted during his second PCR proceeding in state court and were presented to the district court in both his first and second habeas petitions. When Creech raised them in his second habeas petition, the district court rejected these claims as second or successive under 28 U.S.C. § 2244(b). After the district court's decision, the Court decided *Magwood*, holding that claims in a second federal habeas petition challenging the sentence imposed in a new state court judgment are not second or successive, even if addressed to issues other than sentencing. *Id.* at 342.

Creech asks that we grant a COA as to his guilty plea claims and remand to the district court to allow that court to address them on the merits in the first instance. We grant the COA. We conclude, based on *Magwood* and later cases decided by our circuit, that the claims are not barred as second or successive. However, rather than remand them to the district court, we deny them ourselves.

### a. Applicability of *Magwood*

"We review de novo the district court's determination that a petition is 'second or successive' under AEDPA." *Gonzalez v. Sherman*, 873 F.3d 763, 767 (9th Cir. 2017). In *Magwood*, the Supreme Court held that a second federal habeas petition challenging a sentence imposed in an intervening state court judgment was not a second or successive petition. *Magwood* left open the question whether § 2244(b) would allow a petitioner who obtains a new sentence to challenge "not only his resulting, *new* sentence, but also his original, *undisturbed* conviction." 561 U.S. at 342 (emphases in original). We answered that question in *Wentzell v. Neven*, 674 F.3d 1124 (9th Cir. 2012). We held that "the basic holding of *Magwood*" must extend to cases where a new petition challenges undisturbed parts of the judgment, including a petitioner's original conviction, because *Magwood* requires us to "interpret successive applications with respect to the judgment challenged and not with respect to the particular components of that judgment." *Id.* at 1127 (quoting *Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010)). "'[W]here a first habeas petition results in an amended judgment, a subsequent petition is not successive,' even if its claims could have been raised in a prior petition or the petitioner 'effectively challenges an unamended component of the judgment.'" *Id.* (quoting *Johnson*,

623 F.3d at 46); *see also Gonzalez*, 873 F.3d at 768–69 ("In short, under the law of this circuit and the Supreme Court, a petition is not second or successive when there is an amended judgment and the petition is the first one following that amended judgment.").

Although *Creech III* and *Creech IV* left Creech's conviction for Jensen's murder undisturbed, Creech may nonetheless challenge that conviction in his second federal habeas petition because his original sentence was vacated and a new sentence was imposed.  Creech's second habeas petition is thus not second or successive as to his guilt-phase claims.

b.  Discussion of *Magwood* Claims

As noted above, public defender Rolf Kehne represented Creech at trial.  Creech claims that, were it not for a conflict of interest in the public defender's office and were it not for Kehne's deficient performance, he would not have pleaded guilty and would instead have gone to trial on the question of guilt.  Specifically, Creech argues that his trial counsel were ineffective because (1) the Ada County Public Defender's Office ("ACPDO") labored under a conflict of interest while representing him; (2) Kehne failed to move to withdraw the guilty plea based on Creech's incompetence and failed to seek additional testing for brain damage; (3) Kehne failed to investigate the purported influence of Sheriff Chuck Palmer in Creech's decision to plead guilty; and (4) Kehne failed to investigate Jensen's allegedly violent history.  We take the arguments in turn.

### i. Conflict of Interest

Creech argues that the ACPDO labored under a conflict of interest in the pre-plea stage. Creech argues that, before he was represented by Kehne, he was briefly represented in different hearings by four other public defenders in the ACPDO. One of these attorneys, Laird Stone, also represented inmate Keith George, who had witnessed Jensen's death. George provided deposition testimony describing Creech's actions in continuing the attack on Jensen after Jensen had stopped fighting. Creech argues that George's testimony contributed to Creech's perception that the case was hopeless and that the court would automatically impose the death penalty, which induced him to plead guilty.

The record belies Creech's argument. Kehne affirmatively sought a continuance to investigate whether the public defender's office had a conflict arising from potential witnesses against Creech who had been represented by the public defender. During argument in the trial court, Kehne clarified that the office was representing another inmate, presumably George, who was trying to reach a deal and was represented by Stone. The prosecution represented to the court that no offers of a deal had been extended to that other inmate, that there was nothing more than a potential conflict of interest, and that the prosecution would inform the public defender's office if an offer of a deal was extended. The trial court determined that there was a potential but not an actual conflict. When George testified in his deposition in August 1981, he was no longer represented by the public defender's office. Creech concedes that the prosecution did not cut George a deal for testimony until his deposition, when it is undisputed he was represented by a private attorney.

Therefore, no actual conflict existed at the time of George's deposition. *See Noguera v. Davis*, 5 F.4th 1020, 1035 (9th Cir. 2021) ("An 'actual conflict' means a 'conflict of interest that adversely affects counsel's performance,' not simply 'a theoretical division of loyalties.'" (quoting *Mickens v. Taylor*, 535 U.S. 162, 171, 172 n.5 (2002))). The state trial court investigated the potential conflict and found that none existed. *See Alberni v. McDaniel*, 458 F.3d 860, 870–71 (9th Cir. 2006). Moreover, the details in George's deposition testimony were not more damaging than the admissions Creech had made to police against the advice of counsel prior to his change of plea hearing. Contrary to Creech's assertion, it is apparent that his decision to plead guilty against Kehne's advice was wholly unrelated to ACPDO's representation of George. The Idaho courts did not unreasonably find Creech's arguments as to Kehne's purported conflict of interest to be without merit. *See Creech V*, 966 P.2d at 21.

### ii.  Failure to Argue Creech's Incompetence or to Obtain Further Mental Testing

Creech argues that Kehne should have moved to withdraw his guilty plea on the ground that Creech was incompetent to plead guilty and that Kehne should have tested Creech for brain damage, which would have raised issues about his competence to plead guilty. Creech asserts that the assessments of Drs. Stoner and Heyrend, along with a suicide attempt the day before he appeared in court to change his guilty plea, should have indicated to Kehne that Creech was incompetent to plead guilty and that further testing was necessary.

We addressed Creech's competence to plead guilty in our decision in 1991. There is nothing in the current record that

leads us to change our earlier conclusion that the record discloses "no evidence that Creech was incompetent to plead guilty." *Creech III*, 947 F.2d at 879–80. When Dr. Heyrend was asked whether Creech "did not intend to plead guilty or did not recognize the consequences of that legal act," he replied "I really have no information in that area." Dr. Stoner testified that Creech, although impulsive and impaired in his judgment, could understand the proceedings against him and was capable of communicating adequately with counsel.

Although Creech, at Kehne's insistence, reserved the right to withdraw his guilty plea if psychological evaluations showed Creech incompetent to plead guilty, those evaluations did not suggest that Creech was incompetent to plead guilty such that Kehne should have pursued further testing or moved to withdraw the plea. Even assuming that Kehne should have pursued further testing, his failure to do so was not prejudicial, as nothing in Dr. Brown's later testimony at the 1995 resentencing hearing suggests that Creech had been incompetent to plead guilty. *See United States v. Howard*, 381 F.3d 873, 877–78 (9th Cir. 2004) ("To establish that his counsel provided ineffective assistance in light of [petitioner's] alleged incompetency, [petitioner] must first demonstrate that he was indeed incompetent to plead guilty."). The Idaho courts did not unreasonably conclude that Creech failed to show that Kehne should have moved to withdraw his guilty plea on the ground that Creech was incompetent. *See Creech V*, 966 P.2d at 21.

### iii. Failure to Communicate or Move to Withdraw the Guilty Plea Based on Undue Influence

Creech argues that Kehne was ineffective for failing to adequately communicate with him prior to his guilty plea,

which resulted in Kehne's failure to challenge and investigate
Sheriff Chuck Palmer's alleged coercion of Creech into
pleading guilty, and for subsequently failing to move to
withdraw the guilty plea based on Sheriff Palmer's influence
on Creech.

During Creech's state PCR proceedings, Palmer testified
that he had an ongoing relationship with Creech dating back
to the early 1970s. Palmer described the relationship as one
of "mutual respect." He recalled that Creech told him early
on that he wanted to plead guilty, and that he "encourage[d]
[Creech] to do that, if that was what he wanted to do."
However, Palmer insisted that he told Creech not to discuss
matters pertaining to the murder with him outside the
presence of counsel.

The record shows that Creech was motivated to plead
guilty independent of any supposed influence by Palmer.
During the change-of-plea hearing, Kehne informed Judge
Newhouse that Creech was pleading guilty against his advice,
and Creech rejected Kehne's advice that they seek a five-day
continuance before entering a guilty plea. During the plea
colloquy, Creech testified under oath that he had discussed
the plea with counsel, was not influenced by the conduct of
others, and believed that he had adequate time to discuss the
matter with counsel. *Doe v. Woodford*, 508 F.3d 563, 571
(9th Cir. 2007) ("Solemn declarations in open court carry a
strong presumption of verity." (quoting *Blackledge v. Allison*,
431 U.S. 63, 74 (1977))); *United States v. Kaczynski*,
239 F.3d 1108, 1115 (9th Cir. 2001) ("We give 'substantial
weight' to [a petitioner's] in-court statements." (quoting
*United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991))).

Even assuming that Kehne rendered deficient performance for failing to adequately communicate with Creech prior to the change-of-plea hearing, Creech cannot demonstrate prejudice. The record contains ample evidence that Creech desired to plead guilty of his own accord, and he has not shown that, even if Kehne had presented a motion to withdraw his guilty plea based on Palmer's alleged influence, the motion would have had a reasonable chance of success. *See United States v. Yong*, 926 F.3d 582, 590 (9th Cir. 2019) ("A plea of guilty entered by an individual fully aware of the plea's direct consequences 'must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper . . . .'" (quoting *Kaczynski*, 239 F.3d at 1114)). The Idaho Supreme Court did not unreasonably conclude that Creech failed to show IAC at the guilt phase on the basis of Kehne's purported failure to communicate with him. *See Creech V*, 966 P.2d at 19–20.

### iv. Failure to Investigate Jensen's History

Finally, Creech argues that counsel's failure to investigate Jensen's purported history of violence led Creech to plead guilty rather than insist on going to trial on a theory of self-defense. Even assuming that Kehne's failure to investigate Jensen's history constituted deficient performance, Creech cannot demonstrate prejudice. We agree with our determination in 1991 that it is "inconceivable . . . , and not merely improbable" that Creech "would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received" if he had gone to trial on a theory of self-defense. *Creech III*, 947 F.2d at 879 (quoting *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984)). Even

accepting for the sake of argument that Jensen had a violent predisposition, there is no reasonable probability that this additional evidence would have outweighed the countervailing and aggravating evidence. *Allen v. Woodford*, 395 F.3d 979, 1002 (9th Cir. 2005) (no prejudice where additional mitigation evidence would have been "insufficient to outweigh the overwhelming evidence in aggravation"). The Idaho courts did not unreasonably so conclude. *See Creech V*, 966 P.2d at 18–19.

### 4. *Lackey* Remand

Creech seeks a COA for a claim that the duration of Creech's confinement for this murder, now forty years, constitutes cruel and unusual punishment in violation of the Eighth Amendment. He relies on Justice Stevens's memorandum respecting the denial of certiorari in *Lackey v. Texas*, 514 U.S. 1045 (1995) (mem.). The district court found the claim procedurally defaulted and dismissed it with prejudice. Even putting aside the procedural default, we note that neither the Supreme Court nor the Ninth Circuit has ever held that the duration of a death row inmate's confinement prior to execution amounts to cruel and unusual punishment. *Smith v. Mahoney*, 611 F.3d 978, 998 (9th Cir. 2010) (collecting cases). We therefore decline to grant a COA for this claim.

### C. Post-*Ramirez* Motion

After the Supreme Court decided *Ramirez*, Creech moved for leave to file replacement or supplemental briefs. Creech contends that, had he known that he would not be able to introduce new evidence on federal habeas review under *Martinez*, he would have made different strategic choices as

to which arguments to pursue in his appeal from the district court's decision after our post-*Martinez* remand. He seeks to file replacement or supplemental briefs based on strategic choices he says he would have made had he known that he was unable to make any arguments under *Martinez*. However, Creech filed such briefs when he appealed the district court's denial of his second amended habeas petition. We heard oral argument based on those briefs in March 2012 shortly before *Martinez* was decided. In those briefs, Creech made precisely the sort of strategic choices that he now says he wants to make—choices as to what arguments to make on appeal when he has no viable arguments under *Martinez*. After we heard argument in the pre-*Martinez* appeal, we voted unanimously to deny all claims adversely to Creech except for those that became available post-argument under *Martinez*. Replacement or supplemental briefs of the sort Creech seeks to file would thus make no difference to the outcome. We therefore deny Creech's motion to file replacement or supplemental briefs.

Conclusion

We affirm the district court's denial of Creech's second amended habeas petition.

**AFFIRMED.**